## Magee *et al. versus* Raiguel *et al.*

1. The declarations of a creditor before the assignment of a debt, are evidence against the assignee.

2. The declarations of a debtor whose debt, &c., has been attached, if made before the attachment, are evidence.

3. To exclude such evidence in excepted cases, the offer must show the evidence to be clearly within the exceptions.

4. French *v.* Breidelman, 2 Grant 319, Tams *v.* Richards, 2 Casey 97, approved.

January 13th and 14th, 1870. Before THOMPSON, C. J., READ and SHARSWOOD, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 21, to July Term 1869.

This was an attachment execution by William Raiguel and others, trading as W. & H. R. Raiguel, against Mary A. McGrath, defendant, and Charles Magee, C. O. Swope, J. R. Hicks and Isaiah Hicks, trading as Magee, Hicks & Co., and Charles Magee, garnishees. The attachment was issued September 26th 1868; it was not served on Magee, but was served on the other garnishees. The attachment was designed to charge the garnishees with certain goods of the defendant, McGrath, that had in August 1865, come to their storehouse. At the time the goods came to the store of the garnishees, the defendant was indebted to the plaintiff and to several other persons. She afterward confessed to the plaintiffs the judgment on which the attachment was issued. There was evidence that the defendant had a dry good store, that in the summer of 1865 it was closed, that the goods in it were removed in a manner calculated to arouse suspicion, that some of them went to the store of the garnishees and others elsewhere; that Magee was at the store very frequently shortly before closing it and after-

[Magee *v.* Raiguel.]

wards, in consultation apparently with the defendant, and that he attended to the removal of the goods. There was evidence also that Swope, another of the garnishees, was there occasionally at the same time, gave directions with regard to some of the goods and packed some of them in boxes. The garnishees gave evidence that the defendant was very largely indebted to Magee, that the goods were delivered to him in payment of the indebtedness, that many other persons, had obtained judgments and laid attachments on property in the hands of the garnishees before the attachment in this case; that they were taken to the store-house of the garnishees by order of defendant's father, and that Magee objected to their coming in. The evidence on each side was quite voluminous and was of the same general character as that given above.

During the trial the garnishees offered to prove by W. Gaw "that the defendant, Mary A. McGrath, before the issuing of the plaintiff's attachment in this case, admitted to him that the said goods had been sent to Charles Magee, and not to Magee, Hicks & Co., and that Magee, Hicks & Co. had no money or goods of hers in their hands, possession, or control." The offer was rejected by the court and a bill of exceptions was sealed.

The garnishees' 7th point was: "The plaintiffs must prove property of Mary McGrath in the hands of Magee, Hicks & Co., over and above all previous attachments and just debts due by her to them at the time of the service of the writ in this case, to wit, September 26th 1868; and should they find less property in their hands than the amount of her debt to Charles Magee, or if more than her debt then less than her debt together with previous attachments, then the verdict must be for the defendants." The point was affirmed with this qualification; "that if the jury should find that Magee's conduct was calculated to put creditors off their guard as to the defendant's goods, that he was guilty of a fraud, the garnishees would not be entitled to credit for the goods alleged to have been received from her on account of his debt, even if said goods were received by him in payment thereof."

The verdict was for the plaintiffs against the garnishees for $1261.09. On the removal of the case to the Supreme Court, the garnishees assigned for error the rejection of their offer of evidence and the answer to their 7th point.

*T. J. Clayton,* for plaintiff in error.—The plaintiffs as attaching creditors stood in the place of the defendant, and her declarations were evidence against them, as they would have been against herself if a party. Kelley *v.* Tibbals, 3 P. F. Smith 408; Baugh *v.* Kirkpatrick, 4 Id. 84. The facts as the plaintiffs allege them, would be the subject of an action on the case for conspiracy, not a pro-

[Magee *v.* Raiguel.]

ceeding by attachment: Penrod *v.* Mitchell, 8 S. & R. 522; Mott *v.* Danforth, 6 Watts 306.

*G. Junkin* and *C. M. Husbands,* for defendants in error.

The opinion of the court was delivered, January 24th 1870, by READ, J.—The declarations of a creditor before the assignment of a debt are clearly evidence, and so where there is an attachment execution, the declarations of the owner of the debt or goods attached made prior to the issuing of the attachment may be given in evidence. This is the general rule, and if they are to be excluded in certain excepted cases, then the offer of the evidence must appear affirmatively to be brought within them. The offer in the case before us was to prove a declaration of the defendant before the issuing of the plaintiff's attachment, and to reject it was error, although upon examination of the witness it might have turned out to be inadmissible from circumstances not stated in the offer.

In French *v.* Breidelman, 2 Grant's Cases 319, Judge Lowrie, delivering the opinion of the court, said " The Execution Act of 1836, sec. 35, allows an execution attachment to issue to reach debts due to the defendant, or deposits of money made, or goods pawned pledged, or demised by him ; and the main question of the present cause is, is this an appropriate writ under the Act to the case of a sale of a store of goods, in fraud of creditors, where the fraudulent vendee has sold part, and has the rest on hand. We think it is."

In Tams *v.* Richards, 2 Casey 97, the same learned judge said : " It is certainly very plain that the service of the execution attachment on William Tams rendered him liable to account to that execution creditor for all the property of John Tams, which he had then obtained in fraud of creditors, up to the amount of that creditor's claim. It would be no defence to William Tams that he had lost a part of the property or intrusted it to the care of others or sold it, and had not yet received payment. That he had received it in fraud of creditors was a sufficient basis for the demand, that he should deliver it up or account to them for the value of it."

This is sound doctrine, and we do not intend to disturb it, but we do not think the observation of the learned judge, in his answer to the defendant's seventh point, comes within the rule of these cases. It assumes that there was a debt due from the defendant to Magee, and that the goods attached were received by him in payment thereof, but that if Magee's conduct was calculated to put creditors off their guard as to the defendant's goods, he was guilty of fraud, and the garnishees should not be entitled to credit

[Magee v. Raiguel.]
for these goods. This cannot be the law, and we are inclined to think there was some misapprehension in the hurry of the trial, or that the meaning of the learned judge has not been very clearly expressed.

Judgment reversed, and *venire de novo* awarded.