SMITH *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF
THE ESSEX COUNTY BANK.

Where the payee of a note which is made payable at a bank, indorses the same
and deposits it with the bank for collection, the bank becomes the agent of the
payee, and not of the maker; and after the note has been paid, no omis-
sion or misapplication of the money by the bank can prejudice the maker,
he being, by such payment, absolutely discharged from the debt.

Hence, if the maker calls at the bank and pays the amount due upon the note,
and takes it up, and the bank neglects to pay over the money to the holder,
the maker cannot maintain an action against the bank, founded upon such
neglect to account to the holder for the money.

THIS was an appeal from a judgment of the county court of
Essex county, affirming the judgment of a justice of the
peace.   The complaint averred that one Hiram Gates, on the
18th of January, 1854, paid to the defendants the sum of $83,
or thereabouts, to be applied upon a certain note made by Gates
to Barney B. Boynton for the sum of $81.82, and dated Novem-
ber 14, 1853, and the interest, and protest fees on the same,
which sum the defendants promised to pay to Boynton; but
that they had neglected and refused to pay it, and that on the
29th day of July, 1854, Gates, for a valuable consideration,
transferred his claim for said money, so paid, to the plaintiff.
The defendants denied the complaint, and for a further answer
averred that if the money was ever paid, it was paid to the de-
fendants as agents of Boynton; and they further answered
that before the assignment Boynton prosecuted Gates for the
same debt, and Gates put in his defense to the action, and it
was decided against him.

On the trial, Gates was introduced and sworn as a witness
for the plaintiff, and testified that on the 18th of January, 1854,
he paid and took up the note; that the amount was $81.80, or
$82.80 odd cents; that he paid it to the teller, at the counter
of the bank, in $10 Essex county bills, except one $5 bill on
the same bank, and received back the change.   On his cross-
examination, he further testified that it was about 2 o'clock
P. M. when he paid the money.   No one was in the bank, at
the time, except the teller and himself and Mr. Thompson, the

cashier; that he never went into the bank and talked about the note and took out his money, but once; that it was done in a great hurry, as he was about starting for Burlington at the time. That he got the money from Mr. Talmadge some two or three weeks previous, and took it that day from his bureau drawer. That Thompson sat at the stove, reading a newspaper, at the time, and did not seem to notice his paying the note to the teller. The witness did not know, at the time he paid it, whether the note was left for collection, or whether the bank owned it. Mr. Boynton, the payee of the note, testified that the bank had never paid him the amount of the note. That it was left by him with the bank for collection, where it was made payable. That he had a conversation with Gates, the day following the protest of the note, which was the 16th of January, 1854, and requested payment of the note. Gates said he would attend to it. Some three or four days after that he spoke to Gates again about it, and Gates said if he got the money on that $600 note he would pay it on his return from Burlington; and said he had $400 in his room, which he had been keeping for another purpose. He met him once again, the second week after the protest, and spoke to him again about the note. He then went to his room and showed him the note. He then went to the bank, and was informed the note was not paid, and that if Gates had it, he had it wrongfully. Martin A. Seymour, the teller of the bank, testified, for the defendants, that on the day Gates swore the note was paid, he was in the bank and talked about it; it was then protested. The witness showed him the note and another one which was becoming due to Gates. Gates expressed disappointment that the note was not yet due, as he expected to pay the Boynton note with its avails. He handed the two notes to Gates to compare, and never saw them after. That Gates did not pay any thing on the note. He missed it in about three weeks after its maturity. That they generally marked the word "*paid*" on notes, when they were taken up. That there was no entry on the books of the bank of the note's being paid. That they made an examination every night, to see if their amount of cash agreed with

their entries. That they did so on the evening of the 18th of January, 1854. At or about that day Gates made application at the bank to have a large note discounted, which was declined. The witness, for the sake of buying peace, as he swore, once offered to pay one half the note, but was advised that it would not answer. It appeared that one other note was produced by the plaintiff, which had been taken up at the bank, but had not been marked with the word "*paid ;*" and also that the witness had once overpaid Mr. Comstock $50 in a count of money, which Mr. C. afterwards returned to the Bank.

Mr. Thompson, the cashier, testified that he was in the bank on the 18th of January, 1854, and was present when Gates came in to look at the notes. The witness had been conversing with Gates, by the stove, outside the counter. Gates had a note made by Reynolds and Tufts for $600, and wanted the witness to discount it individually, which he declined to do. He then went to the counter and conversed with Seymour, in relation to the notes ; saying, as he went, "if he could not get money on his paper, he could not pay." Seymour showed him some notes, and Gates said he was in hopes one note would pay the other. Did not see him pay Seymour any money, and thinks if he had, he must have seen it. The cash account of that day agreed with the books. The note was never owned by the bank. It was left there by Boynton for collection. All the parties live in Keeseville. It appeared from all the evidence that Gates was never in the bank but once, to look at the notes. Harvey Carter testified that he was a justice of the peace of Chesterfield, in June, 1854. That in that month there was a suit tried before him, in which B. B. Boynton was plaintiff and Hiram Gates defendant. The action was brought to recover the amount of the identical note, which Gates in this suit claims to have paid the bank, and the defense to that suit was, such payment. Mr. Seymour was sworn and testified, and the justice rendered judgment for the plaintiff against the defendant Gates, for the amount of the note and interest, on the 5th of June, 1854. This evidence was objected to by the plaintiff's counsel as immaterial and irrelevant, but was received by the court.

The testimony being closed, the court, after taking time to deliberate, rendered judgment in favor of the plaintiff for $89.69, damages and costs, which the Essex county court affirmed, and the defendants appealed to this court.

*Finch & Smith,* for the plaintiff.

*S. Ames* and *A. C. Hand,* for the defendants.

*By the Court,* C. L. ALLEN, P. J. The evidence on the part of the plaintiff shows that the note was made payable at the defendant's bank and indorsed by Boynton, and there left for collection. That after maturity and protest it was *paid* by Gates to Seymour, the teller of the bank, who received it from the teller, as he swears, when he paid it. This is the theory of the plaintiff's case, and the justice has so found the facts, although they are denied by the defendants. Admitting the finding to be correct, I do not perceive how the plaintiff can be legally entitled to recover. The bank was the agent of Boynton, and not of Gates, and no omission or misapplication of the money could prejudice Gates, after payment. If he testified to the truth when he swore that he paid the note to Seymour, and took it up, then such payment was an absolute discharge of him, and whether Seymour, as teller of the bank, accounted for it, or paid it over to Boynton, was a matter of no sort of consequence, so far as he, Gates, was concerned. He had entirely absolved himself by paying the note, at the place where it was made payable, and thereby *canceled* his debt. (*Story on Bills, sec.* 201, *&c. Howard* v. *Ives,* 1 *Hill,* 263. *Dunlap's Paley on Agency,* 91, *note* 274, 5. 2 *Kent's Com.* 630. *Montgomery County Bank* v. *Albany City Bank,* 3 *Seld.* 459. *Colvin* v. *Holbrook,* 2 *Comst.* 126. *Com. Bank of Penn.* v. *Union Bank of N. Y.,* 1 *Kern.* 203. *Allen* v. *Merchants' Bank of N. Y.,* 22 *Wend.* 215, 225. 2 *Parsons on Cont.* 126. *And see* 3 *Hill,* 560 ; 1 *Peters,* 50 ; 12 *Conn. Rep.* 304 ; 23 *Pick.* 330 ; 15 *Wend.* 482 ; 20 *id.* 321 ; 12 *id.* 178 ; 4 *Burr.* 1984 ; 5 *Denio,* 639 ; 3 *Comstock,* 327.)

The bank was only liable to Boynton, its principal, and can in no sense be said to be the agent of, or liable to, Gates. Boynton was the *owner* of the note, and had left it with the bank for *collection.* And that institution would have been liable to him for any neglect or omission on its part, or for a refusal to pay over the money to him. All the authorities above cited show that the bank, in all such cases, is the agent of the owner of the note, and not of the maker, who is bound to make payment where, by the terms of the note, it is made payable. In some of the cases, the bank was held liable for losses sustained by the holder and owner of the note, by not properly charging an *indorser.* It was well said, on the argument, that " if the bank, in such cases, could be said to be agent for the maker, it is agent for *prior* indorsers, whereas its neglect has discharged such indorsers and made itself liable ; that is, the neglect of a bank, as agent, has discharged its own principal."

The justice, while he admits that if the evidence of Gates is the true statement of facts, the payment made to the bank operated instanter as a satisfaction of the note, and would have constituted a perfect bar to the action in favor of Boynton, against Gates, yet contends that inasmuch as the bank *denied* the receipt of the money, it must be considered as the agent of both parties, and that having been intrusted with the money, by Gates, to pay the note, and not having done so, it is therefore liable to an action by him to recover it back. But, to come to a conclusion that the plaintiff is entitled to recover, he assumes, as he must, that Gates actually paid the note to the teller, and took it up. No matter whether that fact is *denied* or not. The justice has so found, and the county court declares that he has found correctly. Then all relation between the bank and Gates, if it ever existed, entirely ceased, and Gates became discharged from all liability on the note. His defense to the suit brought by Boynton, afterwards, against him, would have been perfect, if he had established the fact of payment, satisfactorily ; and if he failed from want of proof, or by the error of the court, his remedy was not changed, so far as the bank was concerned, and it was no more liable than it was before that trial, The counsel

for the plaintiff insists that the bank was at least as much the agent of Gates as of Boynton, and that the bank agreed with Gates to receive the money *and pay it over to Boynton.* The bank received the note, in their ordinary mode, as collecting *agent* for Boynton. When Gates paid it to the latter he was absolutely discharged from all liability. He took it up. It was in his possession, and was entirely canceled. If Boynton had prosecuted the bank, upon Gates' evidence, uncontradicted and unexplained, he would most undoubtedly have been entitled to recover. The bank became the agent of the holder, by taking the note to collect. It was indorsed by Boynton, for the express purpose of authorizing it to receive payment. Payment was made by Gates to the bank, the agent of Boynton, according to the plaintiff's theory, and the debt, as to him, became extinguished. There was nothing left for it, as agent of Gates, to do. It had applied the money in payment of the note, as it had authority to do, and all liability ceased, so far as he was concerned. This is the most favorable view that can be taken, in favor of the plaintiff. It may be observed that the indorsement in blank, by the payee, and the possession by the bank, gave to it the legal title to the note. The bank was the legal holder of the note, so far as the maker was concerned; and unless it had been obtained by the latter by fraud, a payment to the bank as holder absolved the maker. The authorities already cited abundantly establish this proposition. And see *Chitty on Bills,* 229, 230; 2 *Kent's Com.* 89. Gates, then, when he paid the note, if he swears truly, paid it to the legal owner or holder, and from that moment it became fully canceled. But the first view taken is, in my judgment, the most satisfactory, and in accordance with the law and the facts.

This view, if correct, renders it unnecessary to consider the other points raised by the counsel for the defendant. Whether the action and judgment between Boynton and Gates, in which the fact of payment of the note to the bank was directly in issue, was so far an adjudication between the same parties or their privies as to be a bar to this suit, or not, I am not to be understood as expressing any opinion. It may, however,

be remarked, in passing, that the defense set up in that action was that the defendant (Gates) " paid said note and protest at the bank, soon after the same was protested, to the agent of the plaintiff, and to the holder of the said note," and that Seymour was sworn, and testified to such payment.

Whether that suit was a bar or not, the pleadings and evidence tended to show that the bank was never regarded as the agent of Gates, and that the payment claimed to have been made by Gates, was a payment to the bank, either as owner, or holder, or agent of Boynton. But I do not dwell on this point. Neither must I be considered as passing an opinion upon the question whether the decision of the justice was supported by the evidence, or whether it is against the whole weight of evidence, or not. The evidence was certainly *contradictory*, and Gates, who was the only witness to prove payment of the note, stands contradicted by three witnesses, as to the most material facts. It is true he had the note in his possession after the alleged payment. But it is also true that the teller swears that he handed him the note to look at and compare with another, at the same time that Gates swears he paid it, and that he (the teller) has never since seen it until produced by Gates. Mr. Thompson and Mr. Boynton both swear to a state of facts entirely inconsistent with the idea of payment of the note. And it appears that the money, out of which Gates alleges he paid it, had been in his possession three or four weeks before it became due, and yet he suffered the note to go to protest, and paid the fees of protest, with the note, in two days thereafter. There are other inconsistencies which might be adverted to, but as I do not mean to express an opinion on this point, I forbear further comment.

The judgments of the county court and of the justice must be reversed, with costs.

[SARATOGA GENERAL TERM, July 8, 1856. *C. L. Allen, Paige, James* and *Rosekrans,* Justices.]