### DODGE ET AL. *v.* FREEDMAN'S SAVINGS AND TRUST COMPANY.

1. Declarations made by the holder of a promissory note or of a chattel, while he held it, are not admissible in evidence in a suit upon or in relation to it by a subsequent owner.

2. The declarations of a party when in possession of land are, as against those claiming under him, competent evidence to show the character of his possession, and the title by which he held it, but not to sustain or destroy the record title.

3. In law, a person with whom a note is deposited for collection is the agent of the holder, and not of the maker.   The maker has no interest in it, except to pay the note.   Failing to do this, he leaves it to be dealt with as others interested may choose.

4. Where a note, deposited in bank for collection by its owner, was paid by a person not a party thereto, with the intention of having it remain as an existing security, and the money so paid was received by the owner of the note, — *Held*, that such person thereby became the purchaser of the note, the negotiability of which remains after as before maturity, subject to the equities between the parties.

APPEAL from the Supreme Court of the District of Columbia.

The Freedman's Savings and Trust Company, on the seventeenth day of May, 1873, exhibited its bill of complaint in the Supreme Court of the District of Columbia, alleging that it owned and held certain unpaid and overdue promissory notes made by the defendant Dodge, and that certain real estate in the city of Georgetown, which had been conveyed in trust to the defendants Jones and Darneille, to secure the payment of said notes, had been unlawfully and fraudulently released from the operation of the deed of trust, and had been conveyed by defendant Dodge to the defendant Darneille, who had conveyed it to the defendant Dunlop, in trust for the benefit of the wife of the defendant Darneille.

The bill prays for the cancellation of the release, and also of the other conveyances; for a sale of all the property covered

by the original trust deed; for the application of the proceeds to the payment of the notes; for damages, if any should be found, against Jones and Darneille; for judgment against Dodge for any balance of said notes remaining unpaid; and for general relief.

The defendant Dodge answered, admitting the making of the notes, and of the deed of trust to secure them, but insisted that the notes had been paid and extinguished through an arrangement between him and William S. Huntington for the purchase of one of the pieces of property included in the trust, and that the complainant obtained the notes after they were due and had been paid.

The other defendants made no defence, and a decree *pro confesso* was taken against all of them.

The case was heard upon the pleadings and evidence, and the court, at special term, dismissed the bill. This decree was, on an appeal to the general term, reversed, and a decree entered according to the prayer of the bill. The case is here on appeal by the defendants from that decree.

The defence rests entirely upon the allegation that the notes made by Dodge, in January, 1869, were paid in January, 1870.

*Mr. Walter S. Cox* for the appellants.

The appellee acquired the notes after maturity, and when they had been paid. A deposit for collection means for payment. It does not authorize the bank to assign, but simply to receive a payment which extinguishes the note. The notices sent out by the bank are a demand for payment. No one had a right to take an assignment of the notes without the consent of the holders. When, therefore, some one goes and tacitly pays the money into bank when due, and takes up the notes, the legal effect is a payment and extinguishment, whether it be by the maker or a stranger. Even if done at the request of the maker, if there be no further agreement, it is none the less a payment, and gives only a right of action for money paid, laid out, and expended. *Burr* v. *Smith*, 21 Barb. 262; *Eastman* v. *Plumer*, 32 N. H. 238; *Cook* v. *Lister*, 13 C. B. 594.

The only doubt ever entertained was, whether the debtor's authority or ratification was necessary. There can be no doubt of such authority in the present case.

Again : as the bank had no authority to transfer the notes, a person dealing with it must be presumed to have knowledge of that fact, and that he would acquire no title by the transfer. This infirmity of title would follow the notes into the hands of any one else taking after maturity.   Byles on Bills, p. 151; *Texas* v. *White*, 7 Wall. 700.

But, besides, in this case, the notes were taken by the appellee from or through Huntington. He paid them under an express contract to do so, and transferred them after that contract had been performed.

It is clear that the appellee did not give the money directly to the holders of the notes. Their actuary gave one check for the entire sum, much larger than any one note. It must have been given first to some third person, who either had paid, or thereupon paid, the notes. That person clearly was Huntington.

The notes, taken when overdue, were taken subject to all defences which Dodge might have made against the holders to whom they were paid, or against Huntington, who held them afterwards.   Story on Promissory Notes, sect. 190; *Andrews* v. *Pond et al.*, 13 Pet. 65; *Fowler* v. *Brantley*, 14 id. 318.

*Mr. Enoch Totten* for the appellee.

Dodge, the maker of the notes, has never paid a dollar on account thereof. He cannot now be heard to say that the notes were extinguished by the transaction between Huntington and the appellee.   *Gernon* v. *McCan*, 23 La. Ann. 84.

The notes cannot be held to be paid and extinguished. The Trust Company surely did not intend to pay them. The fact that it took them into possession, and held them, shows this was not its intention. It acted in good faith.

When money is paid on account of notes by a third party not liable on them, the notes will be extinguished or not, according to the intention of the party paying.   *Harbeck* v. *Vanderbilt*, 20 N. Y. 395. Payment to a bank of notes held by it for collection, by one not liable on the notes, does not amount to an extinguishment of them.   Byles on Bills, 175; *Pacific Bank* v. *Mitchell*, 9 Met. 297; *Deacon* v. *Stodhart*, 2 M. & Gr. 317; *Jones* v. *Broadhurst*, 9 M., Gr. & Sc. 173.

Huntington did not pay out any money whatever; and, if he

ever had the notes in his possession, he held them only as cashier of the bank, or as agent of the Trust Company.

If these notes, instead of being transferred to the possession of the Trust Company, had been retained by the respective holders, and actions at law had been by them instituted thereon against Dodge, notwithstanding the payment of the amount due on them by the Trust Company, a plea of satisfaction by the Trust Company, interposed on behalf of the defendant Dodge, would have been bad on demurrer. *Clow* v. *Borst*, 6 Johns. 37; *Daniels* v. *Hollenbeck*, 19 Wend. 408; *Jones* v. *Broadhurst*, 9 M., Gr. & Sc. 173.

MR. JUSTICE HUNT delivered the opinion of the court.

It is conceded in the pleadings that Dodge made the notes in question; that the property described in the trust deed was conveyed to Jones and Darneille to secure their payment; that the notes were just debts, and the trust deed a valid security for their payment. Why, then, should not the security of the trust deed remain to the holder of the notes? The answer is, that the notes have been paid; therefore the trust deed has discharged its office, and the security by law reverts to or is held for the benefit of its original owner. The principle of law involved in this proposition is too plain to justify discussion, and hence it is that the defence, which seeks to cancel this security, rests upon the sole ground that the notes have been paid.

A portion of the evidence contained in the bill of exceptions consists of the declarations made by William S. Huntington. Evidence of this character was given by each party, and admitted, notwithstanding the objection of the other. No principle can be found to justify the admission of this evidence. It has long been settled that the declarations made by the holder of a chattel or promissory note, while he held it, are not competent evidence in a suit upon it, or in relation to it, by a subsequent owner. This was settled in the State of New York in the case of *Paige* v. *Cagwin*, 7 Hill, 361, and is now admitted to be sound doctrine; and that the party is since deceased makes no difference (*Beach* v. *Wise*, 1 Hill, 612); or that the transfer is made after maturity (*Paige* v. *Cagwin*, *supra*). The same is

true of the declarations of a mortgagee (*Earl* v. *Clute*, 2 Abb. Ct. App. Dec. 1); or of the assignor of a judgment (16 N. Y. 497); or of an indorser (Anthon's N. P. 141); or of a judgment debtor (1 Denio, 202). Assuming that Huntington was the owner or holder of these notes, his declarations are not thereby made competent evidence.

Nor can these declarations be admitted in evidence, on the theory that Huntington was the owner of the real estate described in the trust deed, and in its actual possession. He never had a legal title, but occupied one of the houses described in the trust deed, a portion of the time as a tenant, paying rent, and during a subsequent period, as it is claimed, under a verbal agreement to purchase it from Dodge by paying the notes in question, paying interest on the notes instead of rent.

The declarations of a party in possession of land are competent evidence: 1st, As against those claiming the land under him. *Warring* v. *Warren*, 1 Johns. 340; *Jackson* v. *Cale*, 10 id. 377. The Freedman's Bank claim nothing under Huntington. They insist that they are the legal holders of the notes, and as such are entitled to avail themselves of the security given for their payment. 2d, Such declarations are competent only to show the character of the possession of the person making them, and by what title he holds, but not to sustain or to destroy the record title. *Pitts* v. *Wilder*, 1 N. Y. 525; *Gibney* v. *Marchay*, 34 id. 301; *Jackson* v. *Miller*, 6 Cowen, 751; *Jackson* v. *McVey*, 15 J. R. 234. To show that the party went into possession under the lessors is a common instance of the admissibility of such declarations. *Jackson* v. *Dobbin*, 3 Johns. 223.

Conceding, therefore, that Huntington was in possession of the premises, his declarations are competent only to show the character in which he claimed, as that of tenant under a lease, or tenant by virtue of an executory contract to purchase. His declarations as to the ownership or payment of the notes are incompetent upon every principle, and must be laid out of view in determining the case.

Upon the remaining evidence the question stands in this wise: The Freedman's Bank establishes its title to the notes

by the production of the notes, by proof that it purchased them by giving its check for $13,786.50, the full amount of principal and interest due on the notes, dated Jan. 24, 1870, and that it has held them from that time to the present. That the bank took the notes upon an intended purchase; that it received interest upon them in January, 1871, and again in January, 1872, is clearly proved. Eaton, the actuary of the bank, by whom the check was drawn, is dead. Huntington, with whom it is alleged an arrangement was made, is also dead. We are thus deprived of the evidence of the chief actors.

We think the truth is here. Huntington made a verbal agreement with Dodge to buy the house he had rented of him, and to pay these notes in satisfaction of the price. The evidence on this point is not free from doubt; and Huntington was certainly at liberty to repudiate the agreement, as being within the Statute of Frauds. But there is no evidence that he wished to do so. When the notes matured, he was not in a condition, or did not wish, to pay them. One note ($2,000) was held by the Chatham Bank, of New York, and sent for collection to the First National Bank of Washington, of which Huntington was the cashier. Huntington's bank forwarded the note to the Farmers' and Mechanics' Bank of Georgetown, and received credit for the amount, $2,121. This note was entered on the bank-books of Washington as due Jan. 24, and as being paid on that day. This was an error; it was, in fact, payable on the 22d.

The note of $4,000 was held by Mr. Robinson, who deposited it in the Farmers' and Mechanics' Bank of Georgetown, for collection, and on the 22d of January, 1870, he was there credited on his account with the amount, to wit, $4,242.

The $7,000 note was held by Mr. Todd, and was by him deposited in the National Metropolitan Bank of Washington, for collection, and his account was in like manner credited with the amount. The record contains no further evidence in relation to the payment of this note.

The evidence is complete and certain that Huntington did not pay the notes or advance the money by which they were taken up. The evidence is quite satisfactory that the Freedman's Bank did advance the money and take up the notes

by its check for $13,786.50, bearing date Jan. 24, and that it has held them since that time. There is no evidence that this check was actually drawn on that day; and it would reconcile some of the discrepancies, if we were to suppose that it bore date of the 24th, but was actually drawn on the 22d, and on that day used in the purchase of the notes. We do not see that it is very material which way this shall be held to be. The title of the Freedman's Bank is the same in either case. There is no evidence that it had knowledge of any obligation of Huntington to take up the notes, if any such existed; and there is no evidence that Huntington did any thing about procuring an arrangement for their being taken up. It dealt with the bank or banks holding the notes in the ordinary way. By law, a collecting bank is the agent of the holder of the note, and in no sense the agent of the maker. *Montgomery Bank* v. *Albany City Bank*, 7 N. Y. 459; 22 Barb. 627. What the holder was entitled to was his money, or the proper diligence to obtain it. If the maker had any thing to say or do in the premises, it was to present himself with the money when the notes matured, pay them, and secure his obligations. Failing in this, he leaves the securities to be dealt with as others interested may choose. There would appear, therefore, in the nature and propriety of the subject, to be no objection to a transfer to a third person paying the money, instead of a technical payment and discharge of the notes. It is to be observed, also, that payment technically can only be made by a party to a bill, or by a stranger, *supra protest*. Chitty on Bills, 392. Such parties may either pay in satisfaction of the note, or pay and hold it as by a transfer, leaving it an existing security. Byles on Bills, 166; *Green* v. *Key*, 3 B. & Ad. 313. It can, therefore, make no difference to the holder, whether, when taken by a stranger, it is taken and held as upon a transfer, or in satisfaction of the instrument. The negotiability of a bill or note remains after maturity as before (Byles, 160–162), subject to the equities between the parties.

The books are full of cases to the effect that an agent to whom a bill is sent for collection cannot lawfully transfer or pledge the same in payment of his own debt, and that the

transferee with knowledge or after maturity gets no title as against the true owner. 1 Pars. on Bills and Notes, 119.

In cases like that before us, where the intention to continue the existence of the note and not to cancel it by payment is made evident, when the money is paid to the collecting agent appointed to receive it, and the owner of the note receives the amount due to him, the authorities sustain the transaction as a purchase.

In *Deacon* v. *Stodhardt,* 2 Man. & G. 317, it was held, that where, to a count by the executors of A., an indorser, against D., the acceptor of a bill, the defendants pleaded payment, and the evidence was that A. had placed the bill in the hands of E. to be presented, who improperly had it discounted, and to regain possession of it paid the amount to the bankers of the acceptor, thus obtained the bill and returned it to A., it was held that there was no payment. Bosanquet, J., said, " It is clear that the payment of the bill by Jones was a payment not on account of the defendants (the acceptors), but that in order that Jones might regain the possession of it." Erskine, J., says, " It appears that Jones, having raised money on the bill, took it up when at maturity, and then returned it to the testator, who was at liberty to proceed upon it at any future time." The bill was thus paid at maturity without the knowledge or consent of the true owner, and was then remitted to the owner, and it was held to be a valid bill in his hands.

In the *Pacific Bank* v. *Mitchell,* 9 Met. 297, it was held, that where the holder of a bill of exchange accepted for the accommodation of the drawer sends it to a bank for collection, and the bank, when the bill comes to maturity, passes the amount thereof to the credit of the holder, this is not such a payment as discharges the acceptor, but the bank succeeds to the right of the holder, and may maintain an action on the bill against the acceptor. The plaintiffs, it was held, succeeded to the rights of the bank, and became *bona fide* holders of the bill.

In *Burr* v. *Smith,* 21 Barb. 262, it was held that a stranger may advance the money and hold the note, if such is the clear intention of the parties at the time of the transaction. The court remark upon it as a suspicious circumstance, that the payer in that case was not called as a witness. He knew, it is

said, in what character and in whose behalf he paid the money, and whose money it was with which the note was paid.

In *Harbeck* v. *Vanderbilt*, 20 N. Y. 395, it was held, that when the amount due upon a judgment is paid, wholly or in part, by one who is not a party nor bound by it, the judgment is extinguished or not, according to the intention of the party paying. So held, where one of the defendants in a judgment upon a joint obligation paid his aliquot portion in cash, gave his note for the remainder indorsed by a third person, and procured the judgment to be assigned to a trustee for such person, without his knowledge. The judgment, it was held, remained unsatisfied for the amount not actually paid by the defendant therein, and might be enforced by the indorser as an indemnity against his contingent liability.

In *Keystone Bank* v. *Gay*, 21 Barb. 459, the principle was laid down, that to constitute payment, money, or some other valuable thing, must be delivered by the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose.

*Judgment affirmed.*