Mr. Justice MacArthur
delivered the opinion of the court:
This is an appeal from a decision of the Commissioner of Patents refusing an application for a patent on belt gearing, tiled August 20, 1876. Applicant’s claim is as follows:
“The endless flexible metallic belt A, formed with a system of holes, a, in combination with pulley constructed with a series of radial spurs arranged to play into the holes, a, of the metallic belt, substantially as herein described, for the purpose specified.”
The alleged invention, it will be seen, consists in combina- . tion of a perforated metallic belt or band, with a pulley having radial spurs or projections on the periphery, which, during the rotation of the pulley, enter the perforations, and so give a positive and non-slipping action to the belt. In other words, the specifications describe a metallic belt, perforated at equal intervals, and combined with a pulley having teeth which fit into the perforations in the rotary motion of the pulley. The advantages claimed for this arrangement are, that it differs from the ordinary belt in the steady hold by which the pullej’ keeps it in place; that it also differs from cog gearing in the absence of noise and reaction of the wheels upon each other; and that it also differs from chain gearing in the fact that a very large proportion of the power transmitted by the belt is due to its frictional or hugging contact on the broad periphery of the pulley. The combination is, therefore, recommended by marked indications of utility, and would be entitled to a patent unless it has been anticipated by previous discoveries.
The Commissioner rejected the application on an appeal made to him from a decision against a patent by the examiners-in-ehiefj and afterwards denied a motion for a rehearing, '■based on the ground that newly-discovered evidence might he considered. The claim was rejected, for the reason that it was substantially anticipated by an English patent, dated August 30,1869, No. 2,586, for improved metallic driving belts. The description of this invention, taken from- a copy of the English patent, is as follows:
“This improved metallic driving belt consists of a wire or *19 rod of iron, copper, or other suitable metal, flattened at intervals of equal distances apart, sufficient to be elastic when annealed, portions of the said wire being left prominent, forming teeth or projections thereon to tit into teeth or notches formed in the surface of the pulleys to be used in connection therewith, for driving or communicating motion to different kinds of machinery. Or instead of projections being formed thereon, .perforations may be made in flattened wire to fit projections formed on the pulleys to be used therewith.
“ In the manufacture of such belts or bands, I use a pair of hardened steel rollers, the surface of one or both being formed suitably to leave the projection or to produce the perforations, as may be required.”
lie then proceeds to describe, by reference to drawings, a pair of rollers for forming the projections on the wire, but makes no further reference to those for making the flattened and perforated belt.
It was considered by the Commissioner that, in view of the state of the art, no further description than is contained in the English patent is necessary to enable any mechanic acquainted with such devices to construct and operate McCloskey’s improvement, and that, therefore, no invention had been made by the applicant. The case comes here on appeal from that decision, the reasons of appealing being that the Commissioner erred in respect of the grounds upon which he refused the patent. In order that the merits of this application may be properly considered, it is, therefore, necessary to determine in what respect the alleged invention is original. If the description in the British patent, taken in connection with what was then known in regard to the state of the art, would suggest the proposed combination to a person of mechanical skill and judgment, the decision of the Commissioner must be affirmed for the reasons stated by that officer in rejecting the claim. The idea of employing driving belts of steel, iron, brass, copper, or other metal possessing strength and flexibility for the transmission of motive power, is not new. They had been used on pulleys for several years, and *20 were patented in England as early as the year 1863. In this country letters-patent, dated December, 1867, were granted for an improvement in machine belting by combining leather with metal riveted thereto., In September, 1868, a patent was granted for improved belting, which consisted of a thin layer of steel or other suitable metal, cemented between two layers of leather or other suitable material, so that said metallic layer may be securely fastened by the edge of the strips being sewed together. And in August, 1869, still another patent was issued for a driving belt made of India rubber and metal strips united together during the process of vulcanization. Any claim made in 1876 for the discovery of metal belting for machinery would not be sufficiently original to justify a patent, nor would the application of such belts, to be used in combination with pulleys, change the result, for that mode of application is illustrated in the several improvements already referred to. Consequently, it is not easily understood how the applicant’s counsel can argue, as a matter of fact, that there was no state of the art as relates to the manufacture of metallic driving belts, and to declare that metallic driving belts were not known in any art before McCloskey’s mention of them. In one of the figures accompanying the drawing to his specification a belt is represented composed of two concentric thicknesses of sheet metal, with a layer of India rubber or other flexible material between, the whole united by rivets; and figure four represents still another belt in two coils of sheet metal strips turned up on itself and riveted. If it is the intention to claim that belts of metal united with other materials were unknown prior to this description, we have only to consider the instances of this kind where, as before mentioned, the same thing is described in previous patents to render this misapprehension quite evident. We have not only descriptions of belts of steel with leather or India rubber, but also of belts exclusively metallic to be used as a substitute for those of leather or other materials. These devices were certainly old when McCloskey applied for a patent in this case, and any claim to originality on that score must be rejected.
*21 The applicant, however, claims invention in another point of view; for he says his belt is original in having a sj’stem of holes, into which the radial spurs enter as the pulley revolves. It is to be observed that McOloskey’s specification describes no pi’oeess of making the improvement, and.claims none. The combination is all for which the patent is asked, and no account is made of any operation by which the belt is perforated or the teeth on the pulley projected. It is, perhaps, proper, however, to suggest that the process of punching metal while being rolled was well known long before the present, application, and at least two patents for improvements in that art were introduced at the hearing.
The expedient of a metallic driving belt with perforations to fit projections formed on the pulley to be used therewith, is also distinctly stated in the English patent to William Winter in 1869, of which mention has already been made. After stating that his driving belt consists of a wire or rod of iron, copper, or other suitable metal flattened at intervals, * * * portions of the said wire being left prominent, forming teeth or projections thereon to fit into teeth or notches formed on the surface of the pulleys, Winter concludes his description in these words: “ Or instead of perforations being formed thereon [on the wire], perforations may be made in the flattened wire to fit projections formed on the pulleys to be used herewith.”
The plan of McCloskey is a metallic belt with holes, in combination with a pulley having projections, or, as he calls . them, “ spurs,” to play into the holes of the belt. In other words, they both describe a metallic belt punched with holes, and a pulley to be used therewith, having projections upon its circumference which pass into the perforations of the belt, and being placed relatively to each other as the pulley is caused to turn by the motive power thus employed. The operation is the same in both cases, and the object attained is a mechanical advantage secured by a process of the same principle. It is true that the particular mode proposed in the first part of Winter’s specification employs projections upon *22 tbe belt to fit into notches on the surface of the pulley, and in this form may not seem to anticipate the claim of McCloskey. It does not follow, however, that the other method he suggests of reversing that arrangement by perforating the belt and transferring the corresponding projections to its pulley is less eligible or less direct in its bearing upon the case now before us. Winter’s specification embraces both modes, and the selection is left to the choice of those who may have occasion to use them. It will not be denied that when a patentee describes an alternate mode of effecting the object, it will be a good ground for refusing a subsequent patent for either of them to another person. The alternative mode set forth in the Winter patent 'involves a belt of wire or other suitable metal flattened, with perforations made therein to fit projections formed on the pulley. The resemblance of this to McCloskey’s claim is evident, both in form and principle, as well as in regard to the materials employed, the only difference being in the verbal terms in which the respective claims are expressed. The exercise of a choice between two modes is not invention, and requires only the skill and. judgment of a mechanic.
The counsel for McCloskey, after remarking upon the difference between the present case and the English patent, observes that Winter’s belt is to be made of wire, and that wire will not answer the purpose, and he produces the affidavit of John W. Button, expert, who states that he made several .experiments with au apparatus constructed substantially as shown in the drawings of said Winter patent for the purpose of making a belt of practical use, and found it impossible. He used copper wire and lead rod, and he declares that a wire cannot be rolled thin aqd punched at the same time, and if it is done it will be of no use. McCloskey claims that his. improvement overcomes this practical difficulty, and gives a belt which will work with uniform smoothness and success. There are two considerations which dispose of this objection. In the first place,Winter’s belt is not to -be made exclusively of wire flattened at intervals, but it may'consist *23 of copper or any other suitable metal. So that any metal capable of a useful application may be employed. It is, therefore, left to the discretion of the machinist, according to his knowledge in metallurgy, to use that which is the most economical and best adapted to the device. Besides, we have seen that, at the date of McCloskey’s application, driving belts of steel, iron, copper, or brass were treated of in different patents, and that there was nothing new in punching metal during the process of rolling.
In the next place, it is true that 'Winter gives an explanation of how he manufactures the belt. But it is only the combination itself which is claimed. The failure of McOloskey’s expert to produce a good belt is immaterial. He sets up no claim to a process, and describes none.
In Cohn v. United States Corset Company, 3 Otto, 386, the Supreme Court say:
“ It is quite" immaterial, even if it be a fact, that the Johnson specification is insufficient to teach the manufacturer how to make the patented corset. It is enough if it sufficiently describes the corset itself. Neither it nor the plaintiff’s specification exhibit the process of making. Neither of them sets up a claim for a process. The plaintiff claims a manufacture, not a mode of making it; and the important inquiry, therefore, is, whether the prior publication describes the article. To defeat a party suing for an infringement, it is sufficient to plead and prove that the thing patented to him has been patented or described in some printed publication prior to his supposed invention or discovery thereof. (Rev. Stats., sec. 4920.) What is required is a description of the thing, patented, not of the steps necessarily antecedent to its production.”
The doctrine thus announced is applicable here. What has already been said regarding the state of the art shows that the whole operation of constructing the device might be properly left to the ordinary skill and judgment of the manufacturer, and that dissimilar methods may be employed in constructing the combination without affecting its originality. *24 Even if the process described by Winter were utterly useless, it would amount to nothing here; for it is not the process that is claimed, but tbe product, consisting of a pulley armed at intervals with projections to be used with a metallic belt having holes. The construction of this contrivance can be easily understood by referring to the latter part of Winter’s description. There the metallic belt is represented with purforations, and the pulley with teeth. These are to be at equal distances, and to fit into each other. Can there be any doubt about this contrivance, or that the statement of it would clearly suggest to a person the claim described by McCloskey ? We think not; and are, therefore, of opinion that the reference to the English patent, taken in connection with the state of the art, would enable any mechanic skilled in that art to construct the device. And all the decisions agree that when these circumstances co-exist they will be sufficient to invalidate any application for a subsequent patent.
The decision of the Commissioner is affirmed.
Carter, Ch. J., dissented.