## CHAPPELL v. MCKEOUGH.

1. SURETYSHIP—CONTRIBUTION.
If a surety pays a note he is entitled to contribution against his cosurety.
    By the payment the note is extinguished, and his action against his
    cosurety is not on the note itself, but on the implied assumpsit.
2. NEGOTIABLE PAPER—PURCHASE OR PAYMENT.
If a note is paid after maturity by a stranger, it will, generally, be held
    to be a purchase and not a payment, especially if it is the intention
    of the party paying not to satisfy the note.   The fact that the pay-
    ment was made by the party purchasing by giving his own note,
    signed also by a surety on the note purchased, does not operate to
    extinguish the note.

*Appeal from the District Court of Las Animas County.*

THIS is an action brought by James McKeough, Jr., as
the assignee of a certain promissory note against W. A.

Burnett, James M. John and Delos A. Chappell, to recover a balance alleged to be due thereon. Burnett and John made default. Chappell interposed several defenses: *First*, denial of the assignment of the note to McKeough, or that he was the owner of the note; *second*, payment; *third*, that John, and not McKeough, was the real party in interest. The further defenses aver that John and Chappell signed the note as cosureties for Burnett, and allege matters that, if true, would defeat an action brought by John for contribution. On motion of appellee these latter defenses were stricken out. The cause was tried to the court on the issues presented by the first three defenses, and judgment rendered in favor of appellee for $6,701.68. Chappell appeals from this judgment.

Messrs. YEAMAN & PARSONS, for appellant.

Mr. JAMES M. JOHN, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

It appears from the evidence that on November 12, 1888, W. A. Burnett, James M. John and Delos A. Chappell executed to the First National Bank of Pueblo their promissory note for $10,000 (the note in suit), payable one year after date, with interest; Chappell and John executing the note as sureties for Burnett. About the time of its maturity, the note was sent by the First National Bank of Pueblo to the First National Bank of Trinidad, indorsed "Collect for account and credit First National Bank of Pueblo." On April 2, 1890, the Trinidad bank paid the Pueblo bank the full amount of the note, principal and interest, and it became the property of the Trinidad bank. On July 5, 1890, John paid the Trinidad bank one half the principal, $5,000, and accrued interest. At the time of such payment, and frequently thereafter, he urged the Trinidad bank to bring suit to collect the balance due on the note from appellant, Chap-

pell. This the bank refused to do, because Chappell was one of its officers. Thereupon John procured the appellee, McKeough, to take up the note, which he did by giving his note, signed by John, for the balance then due thereon, had the note assigned to him, and on the next day instituted this action.

The controlling question in the case is whether, upon this state of facts, the transaction through which McKeough obtained the note from the Trinidad bank constitutes a payment or a purchase of the note. It is strenuously insisted on the part of appellant that it is in effect a payment of the note by John, and that he is the real party in interest; that McKeough is therefore not entitled to maintain the action, and, if permitted to do so, the appellant should have been allowed to avail himself of any defense that he could have made in an action brought by John for contribution. On the other hand, appellee insists that he purchased the note, and became thereby subrogated to the rights of the holder of the note from whom he purchased, and can maintain the action in his own name, unaffected by any of these matters.

The law applicable to these respective contentions is well settled. The difficulty arises in determining which of them is established by the evidence. If a surety pays a note, he is entitled to contribution against his cosurety. By the payment the note is extinguished, and his action against his cosurety is not on the note itself, but on an implied assumpsit. "An indorsement or assignment of the note cannot serve to keep the note itself alive so as to be made the basis of a suit." *Fitch v. Hammer*, 17 Colo. 591; *Swem v. Newell*, 19 Colo. 397.

If, on the other hand, a note is paid after its maturity by a stranger, it will in general be held to be a purchase, and not a payment. This is especially so if it is the intention of the party paying not to satisfy the note. *Dodge v. Freedman's Savings & Trust Co.*, 3 Otto, 379; *Barney v. Clark*, 46 N. H. 514; *Harbeck v. Vanderbilt*, 20 N. Y. 395.

It is evident that the appellee procured the note and instituted the action at the instance and upon the request of John; and it is also equally evident that it was the intention of the parties to the transaction to preserve the life of the note by a purchase by, and assignment to, McKeough. For this purpose, and in consideration thereof, he gave his note, and thereby incurred a liability to the bank accepting it.

Does the fact that John signed this note constitute the transaction a payment, by him, of the balance of the note in question? We think this must be answered in the negative, upon the authority of *Harbeck v. Vanderbilt, supra.* This was a case very similar in its facts to the one at bar. Decker and Brown recovered a judgment upon a joint contract against Jacob H. Vanderbilt and others. An execution having been issued to a county in which Jacob Vanderbilt had abundant property to satisfy it, he, through his attorney, paid his aliquot share—one seventh of the judgment —in cash, and for the remainder he delivered to the plaintiffs in the judgment his promissory note, payable four months after date, to the order of and indorsed by Cornelius Vanderbilt. The attorney simultaneously took to himself an assignment of the judgment, to be held by him as an indemnity to Cornelius Vanderbilt against his liability as indorser of the note.

Before the note became due, Vanderbilt's attorney caused a fresh execution to be issued to collect the balance of the judgment against Harbeck and others, who were judgment debtors. In an action by Harbeck and others to enjoin the levy and collection of this execution, upon the ground that the judgment had been satisfied by Jacob Vanderbilt, the opinion of the court was rendered by Gray and Selden, J. J., and it was held that the judgment was not satisfied and could be enforced by Cornelius Vanderbilt as an indemnity against his contingent liability as indorser. After discussing the general principles upon which the case depended, Selden, J., used the following language:

"Cornelius Vanderbilt did not actually pay any portion of

the judgment, but he became contingently liable to pay it, and an assignment of the judgment to protect him against this liability was just as legitimate and proper as it would have been to indemnify him for money paid.

" Here then is an assignment made, evincing an evident intention not to satisfy the judgment, but to keep it in force for the benefit of somebody. It was perfectly equitable and just, as well as legal, that it should be kept in force as to the defendants who had paid nothing upon it, for the benefit of one who had made himself liable in a certain contingency to pay it."

The facts before us present a much stronger case in favor of appellee. The reasoning in that case clearly sustains his contention that the facts in evidence show a purchase, and not a payment, of the note in suit. We think, therefore, that the court below correctly held that the note sued on was a subsisting obligation, and that appellee was the owner thereof and entitled to recover the balance due thereon. The judgment of the district court is accordingly affirmed.

*Affirmed.*