[Civ. No. 9464. Second Appellate District, Division Two.—April 25, 1935.]

WELFARE INVESTMENT COMPANY (a Corporation), Respondent, v. N. W. STOWELL, Appellant.

Davis & Thorne and P. E. Keeler for Appellant.

Meserve, Mumper, Hughes & Robertson for Respondent.

STEPHENS, P. J.—This is an action on a promissory note for the sum of $130,000 interest, attorney fees and costs. The trial was before a jury and after introduction of the note and evidence given as to the value of attorney fees, the plaintiff rested. The defendant thereupon introduced testimony upon the issue of payment and upon the issue of fraud in the assignment of the note to plaintiff and respondent. The court thereafter granted plaintiff's motion for a directed verdict in its favor. This appeal is from the judgment made and entered upon such verdict. There is also an attempted appeal from an order denying

the motion for new trial but as this right no longer exists, this part of the appeal is dismissed.

Appellant contends that the evidence shows that the note was paid or at least that the evidence upon that issue was such as to entitle the cause to be submitted to the jury. Although there is very little conflict of evidence in the case, there is sharp conflict between counsel as to the factual and legal conclusions to be drawn from the evidence.

On May 12, 1931, N. W. Stowell, appellant and sole defendant in the trial court, together with William Lacy, F. V. Gordon and F. B. Chapin signed a promissory note as makers in favor of Security-First National Bank as payee. It appears that after a time the bank experienced difficulty in collecting the interest and, according to the deposition of Wm. Lacy (he had died before the trial) Mr. Jack Kerr, vice-president of the bank, had discussed this with him and had said ''Well, Bill (Mr. Lacy) we look to you for the payment of that note.'' Mr. Lacy replied, ''Well, I guess if you sue me you could collect it.''

Mr. Stowell (defendant-appellant) testified that he had a conversation with Mr. Wm. Lacy about the note and that he gave Lacy a check for his proportion of interest (one-quarter thereof) and offered to pay one-fourth of the principal but Mr. Lacy wanted him to pay one-half and Lacy would pay one-half (his and his brother-in-law's portion). This Stowell declined to do.

It will be well at this juncture to examine into the relation of the plaintiff and respondent and its connection with this action. Welfare Investment Company was a family corporation of which Mr. Wm. Lacy was a director and president, and his sons Wm. G. Lacy, Walter P. Lacy, Roy Lacy and Gordon Lacy were directors. It is contended by appellant that the evidence introduced and hereinafter alluded to tends to prove that this company was not only the agent of but was in fact the *alter ego* of Wm. Lacy. This is disputed by respondent who refers to the undenied testimony that the other directors had invested their own funds in the corporation; that Mr. Roy Lacy was its general manager and Mr. Wm. Lacy was a minority stockholder.

At the trial Mr. Roy Lacy testified that he was secretary and treasurer of the Welfare Investment Company; that the

first time the matter of the note sued upon was discussed in a directors' meeting was in July, 1931, but that he had previously talked with his father concerning the acquisition of the note by the Welfare Company,—that his father had explained the circumstances relating to the note. "Possibly" his father had mentioned that he (the father) might have to pay the note and the witness later said, "I made the suggestion that the Welfare Investment Company buy it and he made no suggestion in that regard." Thereafter the father discussed the matter with Mr. Meserve who testified at the trial that he had been consulted professionally by Mr. Lacy about the note.

At the "Welfare" directors' meeting the matter of the note was discussed as was also its purchase by the company but nothing was said about getting the money for such purchase. The relevant portions of the company's minutes are as follows: "The meeting was called to order by the president, William Lacy, and minutes of the previous meeting were read and approved. The president reported the situation of a note jointly signed by himself and N. W. Stowell, F. B. Chapin and F. V. Gordon, stating the situation as to the position of the note and suggesting certain conditions under which the note may be collected. The secretary, upon motion, seconded by W. P. Lacy, offered the following resolution: 'Resolved that the Welfare Investment Company purchase from the Security-First National Bank, Fifth and Spring Street Branch, a note held by them in the name of Lacy, Stowell, Chapin and Gordon, and that the Welfare Investment Company inaugurate proceedings to collect said note.' "

The Security-First National Bank carried separate ledger sheets upon which this note was charged against the makers and upon such sheets under the date of the Welfare acquisition of the note, these accounts were credited in the payment column. The bank representative testified that the bank committee discussed the matter as a "sale" of the note. It should here be stated that the note itself was endorsed on its back as follows: "Los Angeles, Calif. July 28, 1931. FOR VALUE RECEIVED the undersigned, SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, hereby sells, assigns and transfers (without recourse) to the

WELFARE INVESTMENT COMPANY, a corporation, the within note and all indebtedness owing thereon and/or represented thereby, including the principal of the original indebtedness, extended and renewed by this note. This assignment is made without representation, guaranty or warranty. SECURITY–FIRST NATIONAL BANK OF LOS ANGELES By C. L. Dawson, Jr. Vice-President.'' In exchange for the surrender of this note, a note for a like sum was executed to the bank by the Welfare Company and endorsed by Wm. Lacy.

Of course, if, in point of fact, the transaction on the part of Welfare Company actually discharged the obligation at the bank by payment thereof, the note was paid and became thereby *functus officio* and the instant cause cannot be successfully maintained. (Sec. 1473, Civ. Code, or sec. 3200, Civ. Code; *Bailes* v. *Keck*, 200 Cal. 697, at 701 [254 Pac. 573, 51 A. L. R. 930] ; *Harris* v. *King*, 115 Cal. App. 357 [298 Pac. 100].) It may be noted that this latter case is quite different from the instant one in that the note was paid directly by one primarily liable and was delivered to him endorsed ''without recourse''. If there is evidence in the instant case that Welfare Company was the agent or *alter ego* of Wm. Lacy, it is authority for appellant's position. On the other hand if, in point of fact, the Welfare Company, as an entity, purchased the note, it became the owner with full right to maintain an action against any one or all of the makers. (*Erkenbecher* v. *Grant*, 187 Cal. 7 [200 Pac. 641] ; *Chappell* v. *McKeough*, 21 Colo. 275 [40 Pac. 769].)

The trial court directed that the jury bring in its verdict in favor of a judgment running from defendant to plaintiff and it did so.

If we find that the court was wrong in so directing the jury and that there was *some substantial evidence* supporting appellant's contention, we must reverse the judgment. We find no such evidence. No evidence is called to our attention which tends to dispute the idea that the Welfare Company was a legitimate business entity in which the directors and stockholders had invested their own funds. There is nothing stronger than suspicion that it was ever

the *alter ego* or the agent of Mr. Wm. Lacy in the matter of this note or in any other matter.

That the sons took a lively interest in the fact that their father would in all probability be called upon to meet this large obligation is nothing to their discredit although their interest could as well be ascribed to the fact that their affairs were linked with those of their father's in the corporation and that his necessity might well have seriously affected the welfare of all.

 And wherein, may we ask, is the fraud? Each and every one of the makers was jointly and severally liable for the whole of the note and continued to be after the transfer. The original holder could have maintained the same suit as the instant one or could have sold to another bank and their successor could have done the same. No question arises here as to the right of appellant to require contribution. Appellant has been placed in no better or no worse position by the suit of respondent than he might have been by any other plaintiff. The fact that the course taken relieved Mr. Wm. Lacy from immediate pressure for payment, if it did, is of no moment to appellant.

In our opinion no evidence is here presented that tends to take the transaction complained of outside of strict business procedure. If there were moral considerations, such as were hinted at in appellant's conversation with Mr. Wm. Lacy about the payment of the note, they are beyond the consideration of either the trial court or this court. Since neither party on appeal mention the matter of attorney fee as involved in the appeal, we too pay no attention to it.

The judgment is affirmed.

Crail, J., and Willis, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 23, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1935.