[No. 9848.  In Bank.—February 19, 1886.]

ARAMINTA CHASE, RESPONDENT, v. DANIEL WHIT-
MORE, APPELLANT.

PROMISSORY NOTE — PURCHASE AFTER MATURITY — BONA FIDE INDORSEE —
TITLE. — The purchaser of a promissory note after its apparent maturity
is not an indorsee in due course of business, and does not acquire a title
thereto free from defects in the title of the person from whom he
purchased it.

ID. — PROVISION FOR ATTORNEY'S FEE — NEGOTIABLE INSTRUMENT. — A
promissory note which provides for the payment of an attorney's fee, in
case suit should be brought thereon, is not a negotiable instrument.

ID. — POSSESSION OF NOTE — TRANSFER BY DEPOSITARY. — The mere posses-
sion by a depositary of a promissory note indorsed in blank by the payee,
in the absence of any other evidence of property or authority to sell from
the owner, will not enable the depositary to transfer the note so as to
pass a good title thereto.

ID. — FINDING — EVIDENCE — RATIFICATION. — A finding that the plaintiff
had not ratified the unauthorized transfer of the note in question, held,
to be supported by the evidence.

APPEAL from a judgment of the Superior Court of
Stanislaus County, and from an order refusing a new
trial.

The facts are stated in the opinion.

*Kittrell & Cole*, for Appellant.

*T. B. Bond*, and *W. O. Minor*, for Respondent.

BELCHER, C. C.—This is an action to recover the value
of a promissory note, alleged to have been wrongfully
converted by the defendant. The case was tried, and
judgment rendered in favor of the plaintiff, from which
and from an order denying a new trial the appeal is taken.

The note in question was dated November 3, 1877, and
was payable to the Farmers' Savings Bank of Stanislaus
County, thirty days after its date. It bore interest at
the rate of one and one half per cent per month, com-
pounding monthly, and provided for the payment of a
reasonable attorney fee in case suit should be brought

thereon. It was assigned by the payee named to the Modesto Bank, and by the last-named bank was held and owned until November, 1879. At that time and until March, 1883, George W. Schell and R. B. Treat were partners, doing business as attorneys at law at Modesto. They did business for the plaintiff, and had money which she had left with them for investment.

On the fourteenth day of that month Schell bought the note of the Modesto Bank for the plaintiff, and paid for it with her money, she at the time having no knowledge of the transaction. The note had on its back a general indorsement made by the payee named in it. Schell received the note and placed it in an envelope, on which he wrote the plaintiff's name, and then placed the note and envelope in a safe in his office. Shortly afterward he reported the transaction to the plaintiff, who was satisfied with it, and wished to let the note run as long as it could safely, because of the large rate of interest it bore. Neither Schell nor Treat had any authority to sell or pledge the note. The note remained in the safe where it was placed until June, 1881, when, without the knowledge of plaintiff or Schell, Treat took it out and sold it to defendant. The sale was made in payment of an indebtedness of one hundred dollars from Treat to the defendant, and for the balance of its face value in money. Afterward Treat told the plaintiff that he had collected the note and loaned the money out again on a mortgage. The plaintiff wished to see the mortgage, but he said he had a place in the bank where he kept such things, and he had put it there.

The mortgage was not produced, and the plaintiff had no further knowledge in reference to the matter until March, 1883, and after Schell and Treat had dissolved partnership. Then she met Treat and they talked over her business. It was found that he had of her money, including this note, which he said he had collected, the sum of $485. He asked her if she would take him as

paymaster, and she said she would if he would give her a first-rate indorser.  He then wrote a promissory note for the amount, which he signed and handed to her; and then wrote a paper, showing a full settlement of all her affairs with him, and asked her to sign it.  She declined to do so until he paid the money or gave her a good indorser of his note.  He then went away, leaving this note in her hands, which is still unpaid.

Some time after this the plaintiff learned that Treat sold the note in controversy here to the defendant, and that he had collected the full amount due on it from the makers.  She then demanded from the defendant that he pay her the money which he had collected on the note, and he refused to do so.  When the defendant bought the note, Treat represented that he owned it, and defendant believed his statement to be true.

Upon these facts, the court below held, and we think rightly, that the defendant acquired no title to the note by his purchase of it, and that the plaintiff had a right to recover from him its value in this action.

The general rule is, that one in possession of personal property can transfer to another, by pledge or sale, no greater interest in the property than he himself has. (*Wright* v. *Solomon*, 19 Cal. 64; S. C., 79 Am. Dec. 196; *Kohler* v. *Hayes*, 41 Cal. 455; *Barstow* v. *Savage M. Co.*, 64 Cal. 388; *Covill* v. *Hill*, 4 Denio, 323; *Cowdrey* v. *Vandenburgh*, 101 U. S. 572.)

There are exceptions to this rule, where the property consists of negotiable instruments, or what comes under the general denomination of currency, and where the owner of the property clothes another with the apparent title to or power of disposition over it, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner being in such case held estopped from afterward asserting his title.  (*McNeil* v. *The Tenth National Bank*, 46 N. Y. 325; *Moore* v. *Metropolitan National Bank*, 55 N. Y. 41.)

This case is not within the exceptions,—

1. When the defendant purchased the note it was long past its apparent maturity, and he was not "an indorser in due course," and did not "acquire an absolute title thereto, so that it is valid in his hands, . . . . notwithstanding any defect in the title of the person from whom he acquired it." (Civ. Code, secs. 3123, 3134.)

Besides, the note provided for the payment of a reasonable attorney fee, and that under our code destroyed its negotiability. (Civ. Code, secs. 3087, 3093.) In other states, the rule is not uniform upon this subject, some of them holding that such a provision does, and others that it does not, destroy the negotiable character of the instrument. (See *Woods* v. *North*, 84 Pa. St. 406; *First Nat. Bank* v. *Bynum*, 84 N. C. 24; *Samstag* v. *Conley*, 64 Mo. 476; *First Nat. Bank* v. *Marlow*, 71 Mo. 618; *First Nat. Bank* v. *Jacobs*, 73 Mo. 35; *Jones* v. *Radatz*, 27 Minn. 240. *Contra*: *Sparry* v. *Horr*, 32 Iowa, 184; *Stoneman* v. *Pyle*, 35 Ind. 103; *Strough* v. *Gear*, 48 Ind. 100; *Bullock* v. *Taylor*, 39 Mich. 137; *Myer* v. *Hart*, 40 Mich. 517; *Nickerson* v. *Shelden*, 33 Ill. 372.)

2. The appellant cannot invoke the doctrine of estoppel against the plaintiff, for the reason that she did not clothe Treat with any apparent title or power of disposition over the note. When it was bought for plaintiff, it had the blank indorsement of the payee on its back, and was then deposited in his safe by Schell.

Schell and Treat became then merely the depositaries or bailees of the note for the plaintiff. They had the possession of it, but that alone did not authorize them in any way to sell or dispose of it. As said in *Covill* v. *Hill, supra:* "The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title."

3. It is claimed for the appellant, that when the plaintiff received and retained the note for $485 in March, 1883, she ratified and confirmed the acts of Treat in sell-

ing her note. The court below found otherwise, and there was testimony to support the finding.

The plaintiff testified: "I took the note on account of knowing what was coming to me. . . . . The note was not taken as a settlement; I refused to accept the note, and Treat asked me to take it on account of knowing what was coming to me,—to fix the amount that was due from him until he could get the indorser or pay the money; at this time I did not know that Treat had sold the note to Whitmore or any person, but I then supposed the note was paid. . . . . I never offered to return the note to Treat, because he was gone."

The judgment and order should be affirmed.

FOOTE, C., and SEARLS, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.