[Sac. No. 1686. In Bank.—April 4, 1911.]

S. B. SMITH, as Administrator of the Estate of Ann Thomas, Deceased, Appellant, v. H. J. GOETHE, C. M. GOETHE, and H. J. GOETHE COMPANY, Respondents.

BILL OF EXCEPTIONS—FAILURE TO SERVE AFTER SETTLEMENT AND ENGROSSMENT.—After a bill of exceptions had been settled, engrossed, and certified, the failure to serve it upon the adverse party, as provided by the amendment of 1907 to section 650 of the Code of Civil Procedure, will not warrant striking it from the record on appeal, where there is no claim or suggestion made that the bill, as settled and certified by the judge, and printed in the transcript on appeal, is in any respect incorrect, unfair, or incomplete.

APPEAL—LAW OF CASE—TRUST—PURCHASE OF PROPERTY OF ESTATE WITH MONEY LOANED TO ADMINISTRATOR — FINDINGS. — Under the doctrine of the "law of the case," the legal propositions declared on the first appeal in this case, reported in 147 Cal. 725, establishing a trust relation in the defendants as to certain property, based on the fact that it had been, in legal effect, bought by the administrator of the plaintiff estate, with money loaned him by the predecessors in interest of the defendants, would be controlling on this appeal, except for the fact that the trial court has made a finding that no such loan was made. It is *held*, however, on this appeal, that such finding is not supported by the evidence.

ID.—PAROL EVIDENCE TO VARY WRITING—PARTIES TO INSTRUMENT.— The rule prohibiting the admission of oral evidence to vary the terms of a writing applies only to controversies between the parties to the instrument, and those claiming under them.

ID.—ESTOPPEL—JUDGMENT FORECLOSING MORTGAGE.—The decision on the former appeal that the judgment foreclosing the mortgage purchased with the money so loaned did not estop the present plaintiff from claiming that a trust relation was created in the defendants is the law of the case on this appeal.

ID.—COTENANTS—PURCHASE OF OUTSTANDING TITLE—TENDER OF PURCHASE PRICE.—The right of one cotenant to claim the benefit of a purchase of an outstanding title or encumbrance by another is conditional upon his election and tender, within a reasonable time, to pay his share of the purchase money.

ID.—TRANSFER OF PERSONAL PROPERTY—EVIDENCE—ADMISSIONS OF GRANTOR WHILE OWNER—RECITALS.—The declarations or admissions made by the grantor of non-negotiable personal property while

he is the owner thereof may be given in evidence against the grantee. This rule is applicable to recitals contained in a written instrument affecting such property, to which the grantor is a party.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn and P. S. Driver, for Appellant.

Devlin & Devlin, for Respondents.

THE COURT.—Upon the former submission of this appeal the judgment was reversed for reasons stated in an opinion which, except for some minor alterations, reads as follows:—

"This is an appeal taken from a judgment within sixty days after its rendition. The transcript contains a bill of exceptions setting forth the evidence and proceedings on the trial.

"In support of his appeal the appellant assigns errors of law occurring at the trial and the insufficiency of the evidence to support the decision. This makes it necessary to consider the motion of the respondents, made to this court, to strike the bill of exceptions from the record on appeal. At the time the bill was proposed, settled and certified, the amendment of 1907 to section 650 of the Code of Civil Procedure was in force. It provided that when a proposed bill of exceptions, with proposed amendments, was settled by the judge, it should be engrossed and certified 'and upon being certified must within five days thereafter be served upon the adverse party.' (Stats. 1907, p. 715.) The clause quoted was stricken from the section in the subsequent amendment of 1909. (Stats. 1909, p. 993.) But as it was in force, in 1908, when this bill was certified, it is necessary to consider the effect of the provision quoted. The bill in question was duly proposed, amendments thereto were proposed, the bill and amendments were settled and the bill, after being engrossed, was certified by the judge. It was not thereafter served upon the respondents, and for the failure to serve it the respondents now move to have it stricken from the record and excluded

from consideration in the decision of the appeal. The purpose intended to be accomplished by the requirement that the certified bill be served on the adverse party is not clearly apparent. It may have been intended to give such party a check against accidental or fraudulent alterations in the bill as printed in the transcript on appeal. Its short life indicates that it did not prove useful. Inasmuch as no penalty is imposed by the section for a failure to make the service required, we feel justified in holding that in a case such as that now before the court, where there is no claim or suggestion that the bill, as settled and certified by the judge and printed in the transcript on appeal, is in any respect incorrect, unfair, or incomplete, the party in fault should not be visited with a punishment so severe as that of striking the bill from the record and practically defeating his appeal. The motion is denied.

"The case comes to this court for the second time. The first trial resulted in a judgment in favor of the estate of Ann Thomas. That judgment, and an order denying a new trial, were reversed. (*Smith* v. *Goethe,* 147 Cal. 725, [82 Pac. 384].) The facts are somewhat complicated, and will, in a general way, sufficiently appear from the opinion filed on the former appeal. When the case was again in the superior court, amended pleadings were filed, and a second trial was followed, as has been said, by a judgment in favor of the defendants. The present appeal is taken by plaintiff from this judgment.

"Of the amendments to the pleadings we shall say merely that the essential character of the action was not changed from that presented by the original complaint and answer. Many of the facts found on the first trial are again found (or admitted) here. The one important difference is connected with the transaction of April 5, 1900, between Frank Thomas and Curtis, Carmichael and Brand, referred to in the former opinion at page 728 of 148 Cal. [82 Pac. 385]. That opinion describes the transaction thus: 'On April 5, 1900, for the purpose of discharging part of the indebtedness of himself and the estate of Ann Thomas, Frank Thomas borrowed from Curtis, Carmichael and Brand, a corporation, the sum of eighty-four hundred dollars, and as security therefor, executed to Brand, as trustee for said corporation, a deed

absolute in form to all his interest in the said seven parcels of land, and at the same time, and as part of the same transaction, executed a written contract with Carmichael, who was acting in behalf of and for said corporation, so far as his duty under the contract was concerned.' Basing its reasoning upon the premise that the eighty-four hundred dollars (which was used to purchase the Cadwallader and other mortgages) was loaned by Curtis, Carmichael and Brand to Frank Thomas, the court concluded that the mortgages were, in equity, bought by Thomas, so far as they affected the property of the estate. We need not here retrace the steps by which the conclusion was reached that, on the facts stated, the defendants, if they purchased at the foreclosure sale with knowledge of the relations between Frank Thomas, as administrator, and Curtis, Carmichael and Brand, took the legal title to the property of the Ann Thomas estate in trust for the estate. The opinion to which we have referred contains a careful and complete analysis of the legal *status* of the parties as affected by their various dealings. Under the doctrine of the 'law of the case' the legal propositions declared on the first appeal would, so far as the facts are the same, be binding now, even if their correctness were open to question, of which there is no suggestion. But the basis upon which the entire argument of a trust relation rested was the fact that the eighty-four hundred dollars was loaned to Frank Thomas, and that the purchase of the Cadwallader mortgage was, therefore, made with his money. At the first trial the finding was in favor of plaintiff on this issue. On the second trial, however, the court made findings in support of defendants' denial of the averment that the money was so loaned and found that the purchase of the Cadwallader and other mortgages was made by the corporation of Curtis, Carmichael and Brand with its own funds and for its own account. It found that on April 5, 1900, Frank Thomas executed a written agreement with Carmichael, whereby Carmichael was appointed Thomas's agent for certain purposes connected with the property. This writing, which is mentioned on page 728 of 147 Cal., [82 Pac. 385], the former opinion, recites that Carmichael has loaned to Thomas upon certain securities the sum of eighty-four hundred dollars. The court finds that the Cadwallader and other notes and mortgages had been pur-

chased by Carmichael for his corporation with its moneys on March 30, 1900; that these purchases had been fully consummated before the execution of the instrument of April 5, that 'Frank Thomas did not borrow, either from said Carmichael, or the corporation of Curtis, Carmichael and Brand, directly or indirectly, the sum of eight thousand four hundred dollars, or any other sum, and that the recital in the said instrument to that effect was untrue. That the said recital was inserted therein through and by inadvertence and mistake.

"Of course, if these findings state the facts, there is an end of plaintiff's case, so far as it depends upon the theory that the purchase of the mortgages was made with the money of Frank Thomas and for his account. But the appellant contends with much vigor that the evidence wholly fails to sustain the findings. This contention, we think, must be upheld.

"At the time of the trial Frank Thomas was dead. The only witness who could testify to the facts of the transaction was Carmichael. The writing was prepared in the office of Curtis, Carmichael and Brand, and was signed by Thomas in the form in which it was presented to him. Its recitals unquestionably made out a *prima facie* showing in support of plaintiff's averment that the eighty-four hundred dollars had been loaned to Thomas. The respondents must look to Carmichael's testimony to find support for the finding to the contrary. We may here note, briefly, plaintiff's claim that this testimony was incompetent under the rule prohibiting the admission of oral evidence to vary the terms of a writing. We think, however, that the case comes within at least one of the exceptions to the rule. It is well settled that the prohibition applies only to controversies between parties to the instrument, and those claiming under them. (*Smith* v. *Moynihan*, 44 Cal. 53; *Hussman* v. *Wilke*, 50 Cal. 250; *Dunn* v. *Price*, 112 Cal. 46, [44 Pac. 354].) If the respondents are not strangers to the contract between Frank Thomas and Carmichael, the estate of Ann Thomas certainly is such stranger. But even though it was open to the defendants to contradict the recitals of the writing, we are satisfied that Carmichael's testimony was insufficient to raise such a substantial conflict as to put the finding of the trial court beyond the power of review here. It amounted, at most, to vague statements, in

answer to leading questions put by counsel for the respond-
ents, that the recital of a loan was a mistake. For example,
there were questions and answers as follows: 'Q. I notice
in this contract the statement, Mr. Carmichael, that it recites
that you had loaned to Frank Thomas eight thousand four
hundred dollars. Now, in view of what you have said, that
statement in this contract is incorrect to that extent? Ans.
Yes sir. Q. You mean by that statement that the statement
you loaned Frank Thomas eighty-four hundred dollars is in-
correct. Ans. Well, it is incorrect so far as I remember;
. . .' And, further: 'Q. Now, Mr. Carmichael, did you
ever loan any money to the estate of Ann Thomas for the
purpose of buying these mortgages from Goethe? Ans. No
sir.' (This, it will be observed, is not a statement that the
money was not loaned to Frank Thomas individually.)  Pre-
ceding this, the witness had stated that the deed from Thomas
to Brand was taken 'so as to secure us for money we had
advanced and that he was owing us at the time I purchased
these other mortgages,' and that he had bought the mortgages
for Curtis, Carmichael and Brand. Standing alone, this state-
ment was entitled to little weight. It did not purport to
recite the terms of any conversation or agreement between
the witness and Thomas, but merely the conclusion or opin-
ion of the former regarding the effect of the transaction. And
that this was the meaning in the mind of the witness is shown
by his later answers on redirect examination. Upon the court
asking 'Was the money you paid to Goethe, was it a loan?'
Carmichael replied, 'No sir, it was not. I never considered it
was.' He then went on to say that his agreement with Thomas
was that 'at any time he paid me my money I was to return
him all that property, all the papers. . . . Mr. Thomas told
me that he was making arrangements at that time with a build-
ing and loan in San Francisco to advance him all the money
that was necessary to take up all of those claims, and I agreed
with him he could take them up at any time he wanted to
by paying me my money and interest on it. That is about
the understanding as I understood it. . . . I never intended
it as a loan to Thomas.' So far as this testimony shows an
agreement—a meeting of minds—it is in no way inconsistent
with an agreement for a loan. Nothing really points to the
contrary except Carmichael's statements that he 'understood'

or 'intended' that there should be no loan. There is no inti-
mation that Thomas 'understood' that it was not a loan. His
written agreement, with its recitals, shows that he understood
the contrary. The uncertain statements of Carmichael, made
years after the event under examination, should not be per-
mitted to prevail against the formal written declaration of
the parties, made at the time of the transaction and as a part
of it. (*In re Irvine*, 102 Cal. 606, [36 Pac. 1013] ; *Moore* v.
*Grayson*, 132 Cal. 602, [64 Pac. 1074].) In saying this, we
are not unmindful of the finding that the payment of the
money was completed before the signing of the contract of
April 5. But a reading of Carmichael's testimony makes it
entirely clear that the payment of the $8400 and the contract
of agency were parts of a single transaction between Thomas
and Carmichael, and that the finding to the contrary has no
support in the record. Add to these considerations the fact
that, on the first trial, Carmichael had testified that he paid
for the mortgages with money he loaned to Thomas, that he
kept them as security for this money owed by Thomas, and
took an assignment of them to himself for the purpose of get-
ting such security—and, also, the far greater probability,
under all the circumstances, of this arrangement than of the
one found by the court, and we may well say that the case is
one of an apparent, rather than a real conflict of evidence.

"The holding that the findings on this subject are not sus-
tained by the evidence makes a new trial necessary. Of the
respondent's contention that the foreclosure judgment con-
stitutes an estoppel against the present claim of plaintiff, it is
enough to say that the contrary was distinctly laid down by
this court in deciding the former appeal. This declaration is
the law of the case.

"There is, we think, no occasion to discuss any of the points
made by the appellant in attacking rulings on evidence with
the exception of the one permitting oral testimony to contra-
dict the recitals of the writing of April 5, 1900, and this has
already been disposed of.

"One of plaintiff's assignments of error is the failure of the
trial court to find on the issue whether the defendants had
notice of the relations between Frank Thomas and Carmichael.
If the finding that the $8400 was not a loan had stood, the
question of notice would be immaterial, but, if it should on

another trial be found that plaintiff's claim regarding the transaction between Thomas and Carmichael was correct, a finding on the issue of notice would be highly important.

"The appellant contends that the facts alleged and found entitle him to judgment, and that this court should order such judgment in his favor, instead of directing a new trial. He bases this claim on the theory that the estate of Ann Thomas and the defendants were tenants in common of part of the property and that the estate was entitled to share in the benefits of any purchase by its cotenants of an outstanding title or encumbrance. 'A cotenant cannot take advantage of any defect in the common title by purchasing an outstanding title or encumbrance and assert it against his companions in interest. The purchase is, notwithstanding his design to the contrary, for the common benefit of all the cotenants. The legal title acquired by him is held in trust for the others if they choose within a reasonable time to claim the benefit of the purchase by contributing or offering to contribute their proportion of the purchase money.' (Freeman on Cotenancy and Partition, 2d ed., sec. 154.) Whether or not this rule is applicable where (as here) the cotenants acquired their interests at different times and under different instruments is a question concerning which there has been some diversity of opinion in the courts. It has, however, never been decided in this state (see *Stevenson* v. *Boyd,* 153 Cal. 630, [19 L. R. A. (N. S.) 525, 96 Pac. 284]), and we prefer to leave it open, since the case at bar may be disposed of on other grounds: As is said in the above quotation from Mr. Freeman's work, the right of one cotenant to claim the benefit of a purchase by another is conditional upon his election and tender, within a reasonable time, to pay his share of the purchase money. (*Mandeville* v. *Solomon,* 39 Cal. 125; *Stevenson* v. *Boyd,* 153 Cal. 630, [19 L. R. A. (N. S.) 525, 96 Pac. 284].) The complaint alleges the making of an offer of payment by plaintiff to defendants. If we assume that this was an allegation of a tender sufficient for the purpose under discussion, the plaintiff is met by the difficulty that his allegation is denied and that the finding of the court is against him. We find nothing in the answer which, in our judgment, obviated the necessity of proving a reasonably prompt tender as a condition of claiming the benefit of the purchase made by the cotenant. The

appellant's contention that he is entitled to judgment on the findings cannot, therefore, prevail.

"The judgment appealed from is reversed."

Upon motion of the respondents a rehearing was granted. One of the grounds advanced was that this court had erred in holding that the recitals in the paper signed by Frank Thomas under date of April 5, 1900, "unquestionably made out a *prima facie* showing in support of plaintiff's averment that the $8400 had been loaned to Thomas." In the briefs preceding the former decision there had been considerable discussion over the question whether these recitals were or were not conclusive against the defendants. Their effect as *prima facie* evidence had not been challenged. In the petition for rehearing it was, however, strenuously urged that these recitals were not evidence at all against the defendants. The rehearing was ordered for the purpose, principally, of considering this point which, if sustained, would have a decisive effect upon the appeal.

The instrument of April 5th was prepared in the office of Curtis, Carmichael & Brand, the then owners of the legal title to the notes and mortgages over which this controversy arose. Such notes and mortgages (which were personal property) were afterwards transferred to the H. J. Goethe Company, one of the defendants herein. Treating the recitals as an admission or declaration by Carmichael on behalf of Curtis, Carmichael & Brand, the question is whether such declarations or admissions made by the grantor of personal property while he is the owner thereof may be given in evidence against the grantee. That such declarations are proper evidence if made by one holding the title to real estate is not questioned. (Code Civ. Proc., sec. 1849.) It is argued, however, that the rule permitting declarations to be used against a grantee of the declarant is not applicable to statements made by one holding title to personal property.

The respondents cite a number of cases in support of this distinction. But an examination of further authorities shows that the rule limiting the admissibility of such declarations to cases affecting real property has not of late been generally followed in either England or the United States. It has, indeed, been repudiated in some jurisdictions in which it had formerly been applied. With but one or two exceptions, the recent decisions supporting the respondents' contention have

been rendered in the state of New York. In that jurisdiction the doctrine urged has undoubtedly received consistent recognition ever since the case of *Paige* v. *Cagwin,* 7 Hill, 361. (*Truax* v. *Slater,* 86 N. Y. 630; *Merkle* v. *Beidleman,* 165 N. Y. 21, [58 N. E. 757] ; *Flannery* v. *Van Tassel,* 127 N. Y. 631, [27 N. E. 393].)· An isolated decision of the supreme court of the United States (*Dodge* v. *Freedman's Sav. & Trust Co.,* 93 U. S. 379, [23 L. Ed. 920]) follows the rule in *Paige* v. *Cagwin,* but in *Fourth Nat. Bank* v. *Albaugh,* 188 U. S. 734, [23 Sup. Ct. 450, 47 L. Ed. 673], the same court reached a conclusion which cannot easily be harmonized with the rule declared in *Dodge* v. *Freedman's etc. Company,* although the earlier case is not mentioned in the opinion. Of the cases cited by respondents from other jurisdictions only one, *Shober* v. *Jack,* 3 Mont. 351, seems to be clearly in point. That case was decided while Montana was still under the territorial form of government. The court followed the Dodge case, deeming itself bound by the precedent established by the supreme court, but did so reluctantly, declaring the holding to be contrary to the weight of authority.

"The English courts and most of the American courts, . . . receive without question all admissions by the vendor of personalty made while title was in him." (2 Wigmore on Evidence, sec. 1083; *Ivat* v. *Finch,* 1 Taunt. 141; *Jennings* v. *Blocker,* 25 Ala. 415, 422; *Randegger* v. *Ehrhart,* 51 Ill. 101; *King* v. *Wilkins,* 11 Ind. 346; *Forsyth* v. *Kreakbaum,* 7 T. B. Mon. (Ky.) 97; *Holt* v. *Walker,* 26 Me. 107, [45 Am. Dec. 98] ; *Magee* v. *Raiguel,* 64 Pa. 110; *Hayward Rubber Co.* v. *Duncklee,* 30 Vt. 29; *Alger* v. *Andrews,* 47 Vt. 238.)

Some of the decisions hereinbefore cited on either side of the question are cases of declarations made by a prior holder of negotiable paper. In this class of cases a distinction is to be drawn between the effect of these declarations as against subsequent holders who have taken before and those who have taken after maturity. In the case of the former the subsequent holder takes the negotiable instrument free of equities affecting prior parties. His title is not identical with that of the first holder. Admissions of the holder are therefore not receivable against him. "But wherever the element of negotiability is wanting—as where the transfer was made after maturity—this distinction ceases; identity of title is found;

and the admissions are receivable." (2 Wigmore on Evidence, sec. 1084, and cases cited.) As in the case of admissions by the owners of personalty generally, admissions by holders of negotiable paper as against subsequent holders taking after maturity (as in the case at bar) are now, except in New York, generally recognized as proper to be given in evidence.

On the main question here discussed there appears to be no direct authority in this state except in two or three cases in which a transfer of personalty having been attacked as made with intent to defraud creditors, it was held that the acts or declarations of the transferer while in possession and tending to show a fraudulent intent on his part, were admissible, although not brought home to the knowledge of the transferee. (*Landecker* v. *Houghtaling*, 7 Cal. 391; *Visher* v. *Webster*, 8 Cal. 109, 113. See, also, *Eppinger* v. *Scott*, 112 Cal. 369, [53 Am. St. Rep. 220, 42 Pac. 301, 44 Pac. 723].) It would be difficult to reconcile these decisions with a rule of exclusion as rigid as that contended for by the respondents. The subject of the admissibility of acts or declarations of persons not parties to the action is covered by various sections of the Code of Civil Procedure. (1848-1853, 1870.) Without reviewing these sections in detail, we believe that, read in their entirety, they do not require us to hold that the recitals of the instrument in question (which was admitted without objection) did not constitute evidence as against the successors in interest of the parties.

Upon the whole case we think the former opinion was correct in its declaration that these recitals made out a *prima facie* showing that the eighty-four hundred dollars had been loaned to Thomas. We have also re-examined the record in the light of the criticisms made by respondents upon other portions of the opinion and, with such modification as has been made in the copy hereinbefore set forth, are satisfied with the views expressed in that opinion.

The judgment is reversed.

Beatty, C. J., does not participate in the foregoing.