[S. F. No. 7896.  Department One.—May 27, 1918.]

## CROCKER NATIONAL BANK OF SAN FRANCISCO (a Corporation), Appellant, v. BYRNE & McDONNELL (an Association of Persons), Respondent.

NEGOTIABLE INSTRUMENTS—BONDS AND COUPONS.—Bonds and coupons of a corporation which state on their face that they are secured by trust deeds or mortgages, although payable to bearer and transferable by delivery, were not negotiable instruments, as that term was defined in sections 3088 and 3093 of the Civil Code, prior to amendment of those sections in 1915.

LOST OR STOLEN PROPERTY—TITLE OF TRUE OWNER.—One who buys lost or stolen property from a finder or thief, though he pay full value, in good faith, and without notice, obtains no title as against the true owner.

NON-NEGOTIABLE BONDS—CUSTOM AND USAGE—EVIDENCE INADMISSIBLE. Where certain bonds, payable to bearer, but non-negotiable by the express terms of sections 3088 and 3093 of the Civil Code, as those sections existed before amendment in 1915, by reason of the fact that the bonds appeared on their face to be secured by trust deeds or mortgages, were kept by a bank which owned them, in a vault to which an employee had access, with authority to take them for the purpose of having the coupons detached, or for presentation for payment at maturity, but with no other authority to remove, negotiate, or dispose of them, were taken and pledged by this employee

with stock brokers as security for his liabilities on his personal transactions with the brokers, and were sold by them under their pledge and the proceeds applied by them on the pledgor's liability to them, and the bank, on discovering the fact, sued the brokers for the value of the bonds, the trial court erred in admitting evidence that by a general usage and custom of trade, bonds payable to bearer but not negotiable instruments as defined by the Civil Code passed by delivery alone, and had by such general usage and custom come to be generally considered as negotiable instruments, and had thereby acquired that character, notwithstanding the terms of the statute.

CUSTOMS—STATUTES—POWERS OF COURTS RESTRICTED.—The rule that custom cannot overcome the positive provisions of a statute, or make that a negotiable instrument which the code declares shall not be such, is equally forceful to prevent the courts from making exceptions not made by the code, and which are contrary to its express terms.

SALES—LIMITATION ON TITLE TRANSFERRED BY SELLER—EXCEPTION TO GENERAL RULE.—The exception to the rule that a seller can give no better title than he has himself is confined to negotiable instruments, money, and currency.

NEGOTIABLE INSTRUMENTS—PASSING OF TITLE BY DELIVERY—NEGOTIABILITY.—The fact that title to a bond or note payable to bearer may be passed by delivery does not make it a "negotiable instrument" within the meaning of the Civil Code, nor within the meaning of that term as used in the decisions, which except negotiable instruments from the general rule regarding sales by a finder or a thief.

BANKS AND BANKING — ESTOPPEL — LACK OF IMPLIED AUTHORITY OF ASSISTANT CASHIER.—Where the assistant cashier of a bank, having access to non-negotiable bonds owned by the bank, but having no authority to negotiate or dispose of them, pledged them as security for his own liabilities to stock brokers through whom he was trading in stocks for his own benefit, and whom he told that he was the owner, the transaction was not one in which he was assuming to dispose of the bonds in behalf of the bank, and there was no estoppel in favor of the pledgee.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, Oscar Sutro, and Morrison, Dunne & Brobeck, for Appellant.

Harrison & Harrison, for Respondent.

SHAW, J.—The plaintiff sued the defendants to recover the value of certain corporation bonds belonging to the plaintiff which had come into the possession of the defendants and had been by them converted to their own use. The bonds and the coupons thereon were payable to bearer, they stated on their faces that they were secured by trust deeds or mortgages, and they were in other respects in the same form as the mortgage bonds under consideration in *Kohn* v. *Sacramento etc. R. Co.,* 168 Cal. 1, [141 Pac. 626]. The court below found in favor of the defendants and rendered judgment accordingly, from which plaintiff appeals.

The defendants obtained possession of the bonds in the following manner. Baker was an assistant cashier of the bank and his duties were of such a character that he necessarily had access to the vaults of the bank and to the bonds kept therein. He had authority to take them out of the vaults to have the interest coupons detached, or for presentation for payment at maturity, but he had no other authority to remove said bonds, and no authority to negotiate or dispose of the same. Byrne & McDonnell were stock brokers in San Francisco. Baker employed them to act for him as brokers in the purchase of stocks for sale on the stock board of San Francisco and other cities. To carry on these operations he was required by Byrne & McDonnell to keep with them a cash margin to cover the possible losses on such stock purchases and such advances as they should make for him from time to time in the business. Being unable at all times to raise the necessary funds for this margin, he abstracted the bonds in question from the vaults of the bank, without the knowledge or consent of plaintiff, and pledged them with Byrne & McDonnell as security for his liabilities on the transactions with them as stock brokers. Two of the bonds so pledged matured and were collected by the defendants, the proceeds being credited by them to their account against Baker, leaving a balance in their favor of $10,685.71. Upon discovering the fact that Baker had thus disposed of the bonds, the plaintiff demanded of defendants the return of all the bonds. The demand was refused, defendants claiming the right to the proceeds of the bonds that had been paid and the right to hold the remainder as security for the amount they claimed was due them from Baker. Plaintiff thereupon began this action for the value of

all the bonds so taken and pledged to defendants. The court below found that Baker, at the time of pledging the bonds, represented to the defendants that he was the owner thereof and that defendants accepted them as security in good faith, in the belief that said representation was true and without knowledge of, or reason to suspect, the fact that Baker had no title.

In *Kohn* v. *Sacramento etc. R. Co., supra,* we held that bonds in the form of those here in controversy, though payable to bearer, and transferable by delivery, under our law are not negotiable instruments as that term is defined in sections 3088 and 3093 of the Civil Code. The case attracted much attention, it was thoroughly argued, and was carefully considered by the court. Similar principles were declared in *Meyer* v. *Weber,* 133 Cal. 681, [65 Pac. 1110] , *Briggs* v. *Crawford,* 162 Cal. 124, [121 Pac. 381] ; *National Hardware Co.* v. *Sherwood,* 165 Cal. 1, [130 Pac. 881], and *Taylor* v. *Jones,* 165 Cal. 108, [131 Pac. 114]. The transactions between Baker and the defendants occurred before the enactments of the amendments of 1915 changing the above sections so as to meet the decision in the Kohn case. The doctrines laid down in the Kohn case are therefore applicable to the present case. We see no reason for changing them. They apply, of course, to transactions made prior to said amendment of the code.

That decision establishes the proposition that these bonds were not negotiable instruments. The plaintiff invokes the well-known rules that the seller of ordinary property can transfer to the buyer no better title than he has himself, and that if such property has been lost by the true owner, or stolen from him, one who buys from the finder or from the thief, though he pays full value and buys in good faith, without notice, obtains no title as against the true owner.

The decision in the Kohn case and in *Chase* v. *Whitmore,* 68 Cal. 547, [9 Pac. 942], fully support plaintiff in the claim that these rules apply to bonds or notes payable to bearer which do not possess the character of negotiable instruments. The last-mentioned case is even stronger than the case at bar. Chase was the owner of a promissory note which was not negotiable because it provided for attorneys' fees in case of suit, a provision which the code, prior to 1905, did not allow in a negotiable instrument (Civ. Code, sec. 3088), and also because at the time of the transaction involved it had lost its character

as a negotiable instrument by reason of the fact that it was past due. It was made payable to order and the payee had indorsed it in blank, thus making it transferable by delivery without further indorsement, and practically payable to bearer. In effect, therefore, it was of the same character as the bonds here involved. Chase became the owner of it and intrusted it to the possession of an agent, but gave him no authority to dispose of it. The agent sold it, as his own, to Whitmore, who paid full value, was without notice of the want of title, and bought in good faith. It was held that the note did not come within the rule that the seller of a negotiable instrument can transfer a good title to a buyer, though he has no title himself, that for both reasons above stated it was not a negotiable instrument at the time of the transfer, that the seller, having no title in himself, could transfer none, that the mere possession by the seller was not evidence of authority from the true owner to sell it, that Chase was not by that fact estopped from reclaiming it from such buyer, and that the defendant Whitmore was liable to the true owner for the return of the note, or for its value, if he failed to return it on demand.

The respondent admits the rule to be that the seller of ordinary property can transfer no better title than he has himself, and that one who buys such property from a finder or from a thief obtains no title against the true owner. They seek to avoid the effect of the rule in this case under the claim that in this state bonds payable to bearer, but not negotiable instruments according to the definition of the Civil Code, pass by delivery alone, and that by the general usage and custom of trade they have come to be generally considered as negotiable instruments and have acquired that character notwithstanding the fact that they violate the terms of section 3088, declaring that a negotiable instrument must be made payable in money only, without any conditions not certain of fulfillment. They further claim that even if such bonds are not negotiable instruments as against the obligor therein, they are such with respect to successive holders as to all matters which do not concern the obligor, and therefore are to be treated as negotiable instruments in any controversy between the plaintiff and the defendants concerning them. Evidence of the usage mentioned was introduced, the court below found that such usage existed, and held with the defendants on both propositions.

The two cases last mentioned hold to the contrary of the first of these propositions and they are decisive on that subject. The English cases cited by respondents in support of the proposition that bonds similar to those here in dispute may, by usage, acquire the character of negotiable instruments, place the decision on the ground that in England negotiable instruments are not defined or declared to be such by statute, but became invested with their peculiar characteristics originally by the general custom of merchants, and that there was in that country no reason why such general custom could not also invest other instruments which pass by delivery with the same qualities and put them in the same class, and they declare that if there was a statute governing the subject, such custom could not enlarge the class created by the statute. (*Goodwin* v. *Robarts,* L. R. 10 Ex. 337; *Rumball* v. *Metropolitan Bank,* 2 Q. B. D. 194; *Bechuanaland etc. Co.* v. *London T. Bank,* [1898] 2 Q. B. D. 658; *Edelstein* v. *Schuler,* [1902] 2 K. B. D. 144.) In the Kohn case we said that custom "never overcomes the positive provisions of statutes" (168 Cal. 7, [141 Pac. 626]), and the statement cannot be disputed. The Civil Code is a positive statute and nothing can be established by custom contrary to its terms. The existence of such custom is therefore of no effect. The court below erred in admitting evidence thereof.

No authority is cited for the second proposition and we think it is likewise in contravention of the code. It is really nothing more than a claim that notes or bonds of a form which the code declares cannot be deemed negotiable instruments may nevertheless become such under some circumstances. The rule that custom cannot overcome the positive provisions of a statute, or make that a negotiable instrument which the code declares shall not be such, is equally forceful to prevent the courts from creating exceptions not made by the code, and which are contrary to its express terms. The language of the code defining such instruments permits of no exceptions in favor of a note or bond non-negotiable in form whereby they may become negotiable instruments after the first holder has sold them, or as against all persons other than the obligor. The courts cannot legislate, especially where the legislation proposed would, in effect, repeal or modify a statute.

We cannot assent to the claim that the rule by which negotiable instruments may be sold by a finder or a thief before

maturity, so as to pass a good title to the buyer, should be, or has been, extended so as to include bonds or notes which, though not negotiable in form, are made payable to bearer and to which title may be passed by sale and delivery. This is directly contrary to the decision in *Chase* v. *Whitmore,* 68 Cal. 547, [9 Pac. 942]. There, as we have said, the note was not negotiable, but it had been indorsed in blank by the payee, and by reason of that fact, the title thereto could be passed by sale and delivery without further indorsement, and it was, in legal effect, thereafter payable to bearer, either before or after maturity. Chase had obtained it by sale and delivery after the first indorsement. Yet it was there decided that it was not a negotiable instrument as between Chase and Whitmore and that the latter derived no title to the note by his purchase from one who had neither title nor authority from the true owner to sell it.

It may be that some of the reasons which led to the exception of negotiable instruments from the general rule that a seller can give no better title than he has himself would apply with equal force to instruments payable to bearer, but not negotiable in form. But this is not sufficient excuse or reason for including such instruments within the exception. The exception has been established from time immemorial and it has hitherto been confined to negotiable instruments, money, and currency. It is to be presumed that this is generally understood, that the owners of such property guard the same with greater care for that reason, a care which the owners of other property need not exercise. It would be unjust and inadvisable as a matter of policy to extend the exception by a judicial decision. And besides it would be judicial legislation, a thing forbidden to the courts. Moreover, in this state, the same cause would logically extend the exception to all personal property. The code makes the title to all such property transferable by oral sale and delivery of possession, and where it so passes, the code allows the buyer to sue in his own name to recover it, if a chattel, or to enforce it if it consists of a promise to pay money. We apprehend that even the respondents' counsel would shrink from these logical consequences of this part of their argument.

It is further argued that every note or bond payable to bearer is negotiable by mere delivery and is therefore a negotiable instrument, regardless of its form. The argument on

this head is supported mainly by extracts from opinions of the courts of other jurisdictions in which the word "negotiable" is used in a sense different from that which it has in the phrase "negotiable instrument." Any contract to pay money the title to which may be passed by delivery alone, or by indorsement, is "negotiable," in the sense in which the word is often used. When the title has so passed it is often said that the instrument has been "negotiated." But the fact that title may be so passed does not make it a negotiable instrument, within the meaning of the Civil Code, nor within the meaning of that term as used in the decisions which except negotiable instruments from the general rule regarding sales by a finder or a thief. This statement is well illustrated by reference to the case of an ordinary negotiable instrument made payable to bearer, or indorsed in blank by the payee and which has become past due. It is then negotiable, in the meaning above referred to, by mere delivery, the same as it was before maturity, but it is no longer a negotiable instrument nor within the exception as to sales by a finder or thief. (*Chase* v. *Whitmore, supra.*)

Respondents cite *Mohr* v. *Byrne,* 135 Cal. 87, [67 Pac. 11]. The case holds that the purchaser by assignment of a chose in action which is not a negotiable instrument takes it free from a secret trust whereby a third person had acquired an interest in it not apparent on its face. A similar rule applies to all property. But there the prior holders were the lawful owners of the legal title. There was no sale by a thief or finder, and no such question as is here presented could have arisen. The application of the arbitrary exception respecting such sales of negotiable instruments was not involved or discussed. The case does not aid the respondents.

There is nothing in the facts found which constitutes an estoppel in favor of the defendants. The transaction was not one in which Baker was assuming to dispose of the bonds in behalf of the bank, so that his position as assistant cashier might imply that he was authorized to do so. He was acting for himself and he told the defendants that he was the owner. He merely had the possession of the bonds. His possession, for the purpose for which he took them, was wrongful. He had them without the authority, knowledge, or consent of his principal, who was the true owner, and in violation of his duty as an agent or employee. The case is not as strong as that of

*Chase* v. *Whitmore, supra,* where the agent had been expressly intrusted with the possession of the note which he wrongfully sold. Here the possession as well as the pledge thereof was wrongful. In that case the court held that there was no estoppel in favor of the buyer. It is decisive of the case at bar on this point also. See, also, *Yamato* v. *Bank of Southern California,* 170 Cal. 351, [149 Pac. 826], to the same effect.

For these reasons we are of the opinion that the court below erred in its conclusions of law and in giving judgment for the defendants. It is unnecessary to consider the other objections urged in supporting the appeal.

The judgment is reversed.

Sloss, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.