[Civ. No. 6536.   First Appellate District, Division One.—December 31, 1928.]

STANDARD DREDGING COMPANY (a Corporation), Appellant, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Respondents.

Elliott B. Davis and George F. Snyder for Appellant.

Ralph H. Spotts, Charles I. Baker, L. L. Otis, H. C. Allen, Jr., and Leona A. Clark for Respondents.

CAMPBELL, J., *pro tem.*—This is an action brought by plaintiff, who is appellant herein, for money held by defendant Title Insurance and Trust Company, as a fund for the redemption of certain collateral trust notes, and to quiet title to the fund as against the other defendants. The collateral notes were issued by North American Dredging Company of Texas. The Title Insurance and Trust Company, a California corporation of Los Angeles, was the trustee holding the collateral by which the notes were secured, which were by their terms payable at the office of the Title Insurance and Trust Company in Los Angeles.

The complaint alleges that ever since the first day of January, 1915, the plaintiff has been the owner of seven of these collateral trust notes, which are numbered respectively 104, 105, 210, 211, 394, 428, and 565; that notes numbered 104, 105, 210, and 211 are for the principal sum of $1,000 each; that notes numbered 394 and 428 are for $500 each, and that note numbered 565 is for $125; that the aggregate amount of the principal and accrued interest of the seven notes is $9,000; that all of the notes have matured and that the defendant North American Dredging Company of Texas

has deposited with defendant Title Insurance and Trust Company a fund in the sum of $9,000 for the purpose of redeeming these collateral trust notes, which sum is still held by the Trust Company. The complaint further alleges that the plaintiff is the owner of this fund. It is further alleged in the complaint that on February 18, 1915, the plaintiff delivered all of these notes to the defendant George C. Morgan, Jr., at Oakland, as its agent, with instructions to negotiate and secure a loan for the plaintiff and to use the notes as security therefor; that at the same time Morgan agreed in writing with the plaintiff that in the event such loan should not be negotiated he would thereupon return the notes to plaintiff; that Morgan never negotiated the loan and never returned the notes; that at the time Morgan came into the possession of the notes he was a resident of Alameda County, but that for several years last past he has been absent from the state; that the notes 210 and 211 are in the possession of the defendant Mrs. Kendall Morgan.

By the complaint, plaintiff offers to give the defendant Title Insurance Company such indemnity as the court may deem proper and asks judgment against the Trust Company for the amount of the fund, upon giving such indemnity as the court may direct, and prays that plaintiff's title to the fund be quieted as to the other defendants. The summons and complaint were served on the defendant Title Insurance and Trust Company on February 17, 1925, and it filed its answer May 1, 1925.

The defendants Mrs. Kendall Morgan and George C. Morgan, Jr., both resided out of the state of California, the former residing in Detroit, Michigan, and the latter in Springfield, Massachusetts.

After defendant Title Insurance and Trust Company had been served and filed its answer, the plaintiff filed an affidavit for publication of summons and secured an order directing that service be made on defendants Mrs. Kendall Morgan and George C. Morgan, Jr., by publication of the summons, which summons was thereafter published and mailed in accordance with the order of the court. The answer of defendant Title Insurance and Trust Company alleges that the security held under the trust agreement, at the request of the North American Dredging Company

of Texas, was reconveyed to such company and released under such trust agreement upon deposit by it of a fund to redeem these notes; that the Trust Company held this fund pursuant to a trust agreement for the account of the legal owner and holder, or owners and holders, of the notes and respective interest coupons and for payment to such person or persons upon due surrender of such notes and coupons to defendant Title Insurance and Trust Company for cancellation. Mrs. Kendall Morgan appeared and filed an answer and cross-complaint, alleging her ownership of notes 210 and 211 for $1,000 each, and praying judgment against defendant Title Insurance and Trust Company for the amount of the principal and accrued interest. The plaintiff and the Trust Company filed answers to the cross-complaint of Mrs. Kendall Morgan.

The case came on for trial on January 18, 1926. On the day of the trial the defendant Title Insurance and Trust Company filed an amendment to its answer setting up therein that George C. Morgan, Jr., is a necessary party to the action; that he is not within the state of California and therefore the court has no jurisdiction of any property or any choses in action belonging to such defendant. At the conclusion of the evidence the defendant Title Insurance and Trust Company moved the court for a nonsuit on the ground that the court had no jurisdiction of the subject matter of the action. The court granted the motion for nonsuit and entered judgment in favor of Mrs. Kendall Morgan on her cross-complaint against Title Insurance and Trust Company for the amount of the principal and accrued interest of the two notes held by her, and quieting her title to the two notes and the amount of principal and interest due as against the plaintiff. Three thousand five hundred forty-seven dollars of the fund deposited by the North American Dredging Company has been deposited with the trial court by stipulation of respective counsel pending the outcome of this appeal, such being the amount of the judgment in favor of the defendant Mrs. Kendall Morgan. From both the judgment of nonsuit and the judgment in favor of Mrs. Kendall Morgan plaintiff has appealed.

Appellant urges that the court has jurisdiction of the subject matter of the action; that the fund was within the state of California and in the possession of the defendant

Title Insurance and Trust Company, which defendant had been served and had filed its answer; that this service and appearance conferred jurisdiction of the subject matter, and that the service thereafter by publication gave jurisdiction of George C. Morgan, Jr., for the purpose of disposing of the fund.

The question presented by this objection is not a new one in this state. In *State of California* v. *Security Sav. Bank*, 186 Cal. 419, 426 [199 Pac. 791], the court quotes the following from *Cooper* v. *Reynolds*, 77 U. S. (10 Wall.) 317 [19 L. Ed. 931, see, also, Rose's U. S. Notes]: "So also while the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equal import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which being incapable of removal, and lying within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the officer's levy of the writ and return of that fact to the court. So the writ of garnishment or attachment, or other form of service, on a party holding a fund which becomes the subject of litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court," and follows with the announcement of the rule: "The service of the summons on the bank is, under the doctrine thus established, the equivalent of a seizure of the property of each depositor in his account with the bank and gives the court jurisdiction over it to the same extent as in cases in garnishment and other proceedings *quasi in rem.*" This case went to the United States supreme court (*Security Sav. Bank* v. *California*, 263 U. S. 282 [31 A. L. R. 391, 68 L. Ed. 301, 44 Sup. Ct. Rep. 108]), and in discussing the question here presented that court says: "Seizure of the deposit is effected by the personal service made upon the bank. (*Provident Inst. for Savings* v. *Malone*, 221 U. S. 660 [34 L. R. A. (N. S.) 1129, 55 L. Ed. 899, 31 Sup. Ct. Rep. 661].) Thereby the *res* is subjected to the jurisdiction of the court. Compare *Miller* v. *United States*, 11 Wall. (U. S.) 268, 297, 298 [20 L. Ed. 135, see, also, Rose's U. S. Notes]; *Alexandra* v. *Fairfax*,

95 U. S. 774, 779 [24 L. Ed. 583]. The service upon the bank has the same effect as had service of the injunction in *Pennington* v. *Fourth Nat. Bank*, 243 U. S. 269 [L. R. A. 1917F, 1159, 61 L. Ed. 713, 37 Sup. Ct. Rep. 282], or the service upon the garnishee in *Harris* v. *Balk*, 198 U. S. 215, 223 [3 Ann. Cas. 1084, 49 L. Ed. 1023, 25 Sup. Ct. Rep. 625], or the application for administration of the debt as absentee in *Cunnius* v. *Reading School Dist.*, 198 U. S. 458 [3 Ann. Cas. 1121, 49 L. Ed. 1125, 25 Sup. Ct. Rep. 721], or levy of the writ and return of the fact to the court on attachment of the real estate in *Cooper* v. *Reynolds*, 10 Wall. (U. S.) 308 [19 L. Ed. 931]." In *Jellenik* v. *Huron Copper Min. Co.*, 177 U. S. 1 [44 L. Ed. 647, 20 Sup. Ct. Rep. 559], the court says: "The stock held by the defendants residing outside of Michigan who refused to submit themselves to the jurisdiction of the circuit court being regarded as personal property, the act of 1875 must be held to embrace the present case, if the stock in question is 'within the district' in which the suit was brought. Whether the stock is in Michigan so as to authorize that state to subject it to taxation as against individual stockholders domiciled in another state is a question not presented in this cause, and we express no opinion on it. But we are of the opinion that it is in Michigan for the purpose of a suit brought there against the company—such stockholders being made parties to the suit—to determine whether the stock is rightly held by them. . . . The corporation being brought into court by personal service of process in Michigan, and a copy being served upon defendants charged with wrongfully holding certificates of the stock in question, every interest involved in the issue as to the real ownership of the stock will be represented before the court." In *First Nat. Bank* v. *Bank of Horatio*, 161 Ark. 259 [255 S. W. 881], in an action to cancel certificates of deposit brought in the county in which the bank holding the funds represented thereby was situated against nonresident defendants, the court held that constructive service was sufficient to bring the nonresidents into court since the action was *quasi in rem* or in the nature of a suit *in rem*, and the situs of the action was, therefore, the place where the fund was located.

Respondent relies principally on the holding in *Belcher* v. *Chambers*, 53 Cal. 635, quoted in *Mudge* v. *Steinhart*, 78

Cal. 34 [12 Am. St. Rep. 17, 20 Pac. 147], as follows: "The state, having within her territory property of a nonresident, may hold and appropriate it to satisfy the claims of her citizens against him, and her courts may inquire into his obligations to the extent necessary to control the disposition of such property; and in such a case service of summons by publication, or other form authorized by law of the state, is sufficient to inform the nonresident of the object of the proceedings, provided the court obtains jurisdiction of the property by seizure, or some equivalent act, *in rem*, or in the nature of a proceeding *in rem*, the object being to enforce proceedings against the property." In the Belcher case, however, personal service was not had upon the defendants composing the banking firm of Page, Bacon & Co., holders of the funds due upon the certificates of deposit, but service was made on all defendants by publication, and defendant Bacon, whose property was seized under execution, being a resident of the state of Missouri. *Belcher* v. *Chambers* and *State* v. *Security Sav. Bank* are, therefore, not analogous. If, however, it be held that they are, the more modern rule that the service of summons upon the bank holding the property is equivalent to a seizure of such property, has succeeded the early rule announced in the earlier case, if such rule, under the circumstances in the present case, was so announced. Respondent argues that as *State* v. *Security Sav. Bank* was an action under a statute providing for the escheat of unclaimed bank deposits, it is not in point here. We are not in accord with this view and see no difference in principle in the two cases. Furthermore, from the language used in *State* v. *Security Sav. Bank*, it is apparent that the court in announcing the rule did so for future guidance. Under the decisions from which we have quoted we are of the opinion that the court erred in granting the nonsuit.

On the appeal from the judgment in favor of respondent Mrs. Kendall Morgan it may be said that the collateral notes transferred to her by her husband, who received them from George C. Morgan, Jr., were not negotiable, being issued January 1, 1915, before the present negotiable instruments law was enacted. The notes are payable to bearer and contain a provision that they are "subject to the terms and conditions contained in the trust

agreement dated January 1, 1915, and executed between the company and the Title Insurance and Trust Company, as trustee; and all the rights of the holder thereof are subject to the provisions of said trust agreement." Article VIII of the trust agreement covers "Default and Remedies," and contains provisions not certain of fulfillment. Thus section 2 of the article provides: "If one of the events of default shall occur, the Trustee may, and upon the written request of the holders of twenty-five per centum (25%) in amount of the notes issued hereunder then outstanding, shall, by notice in writing delivered to the company, declare the principal of all notes issued hereunder, then outstanding, to be due and payable forthwith." Section 3088 of the Civil Code, as in force January 1, 1915, reads as follows: "A negotiable instrument must be made payable in money only and without any condition of fulfillment except that it may provide for the payment of attorney's fees and costs of suit, in case suit be brought thereon to compel the payment thereof."

*Popp* v. *Exchange Bank,* 189 Cal. 296 [208 Pac. 113], disposes of this question. There the court says: "The next contention of the plaintiff is that the bonds in question are not negotiable. We think this proposition must be sustained. The bonds were issued apparently in the state of New York on January 1, 1912. They are payable to the bearer, or to the registered holder in case the bonds be registered, and on their face they show that they are secured by a mortgage or trust deed upon real property and they become due on January 1, 1962. The record does not show that they were ever registered. They are precisely similar in all respects to the bonds under consideration in *Kohn* v. *Sacramento etc. Co.,* 168 Cal. 1 [141 Pac. 626], and *Crocker National Bank* v. *Byrne,* 178 Cal. 329 [173 Pac. 752]. In each of these cases bonds of that description were held to be non-negotiable under the law in California in force in 1912, and the proposition must be considered as settled. The rule is that the defendant cannot protect itself upon the rule, applying to negotiable instruments only, that where the holder thereof has by delivering the instrument to a third person clothed him with an apparent title thereto, and such third person disposes of it to an innocent purchaser, such purchaser obtains title as against the true

owner, although the person to whom it was delivered had no authority to make a sale thereof. (*Chase* v. *Whitmore*, 68 Cal. 547 [9 Pac. 942].)''

While it is true that the legislature, by an act which took effect on August 8, 1915, so amended our code with relation to negotiable instruments as to make the notes here negotiable, the law in force at the time the contract is made must apply with respect to its interpretation, ''otherwise the legislature would itself make a contract for the parties.'' (1 Daniel on Negotiable Instruments, sec. 871; *Popp* v. *Exchange Bank, supra.*)

The notes in question being non-negotiable, in order that plaintiff be estopped from denying the agents authority to sell or dispose of them, it must appear that plaintiff had clothed its agent, George C. Morgan, Jr., with some authority to do so. According to the record the authority of George C. Morgan, Jr., to do anything with the collateral trust notes, other than to return them to plaintiff, ceased when he received the notes from the bank, upon the loan being paid with money furnished by plaintiff. His authority in the first instance was limited to pledging them to the Bank of Los Gatos. The plaintiff demanded them from him but never received them. Upon the record in its present state plaintiff is not, therefore, estopped to assert ownership. (*Chase* v. *Whitmore*, 68 Cal. 545, 548 [9 Pac. 942].) In the cases cited where the owner has been held estopped to claim property sold or pledged by an agent, the agent had either actual authority to pledge or to sell, or indicia of ownership, and in *Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675 [227 Pac. 723], which respondent asserts ''conclusively answers appellant's contention and its reliance on the Popp case,'' Hewlett, as shown by the records of the corporation, was the actual owner of the stock transferred by him.

We are of the opinion that the court should have admitted the declarations of defendant George C. Morgan, Jr., made while in possession of the notes, as the declarations against interest by one in possession of personal property are admissible against his successors in interest. (*Smith* v. *Goethe*, 159 Cal. 628, 636–638 [Ann. Cas. 1912C, 1205, 115 Pac. 223].)

Under the view we have taken it is unnecessary to discuss appellant's exception to the ruling of the court sustaining

the objection to the introduction in evidence of the note and collateral agreement for which the notes in question were pledged as security, as the objection was sustained upon the theory that the coupon notes were negotiable, and that the court had no jurisdiction of George C. Morgan, Jr.

The judgments are reversed and the cause remanded.

Knight, Acting P. J., and Cashin, J., concurred.